John M. PEARCE

v.

E.F. HUTTON GROUP, INC., Appellant.

No. 86–5281.

United States Court of Appeals,
District of Columbia Circuit.

Argued Feb. 17, 1987.

Decided Sept. 11, 1987.

John J. Walsh, with whom Mark C. Ellenberg and Harvey M. Spear, New York City, were on brief, for appellant.

Stephen G. Milliken, with whom John P. Coale, Washington, D.C., was on brief, for appellee.

William J. Fitzpatrick, New York City, was on brief, for amicus curiae, The Securities Industry Ass'n urging the reversal of the District Court's decision.

Before BORK * and D.H. GINSBURG, Circuit Judges and OBERDORFER **, United States District Judge for the District of Columbia.

---

* Judge Bork was a member of the panel at the time this case was argued but did not participate in the final decision.

Opinion for the Court filed by Circuit Judge D.H. GINSBURG.

Concurring opinion filed by United States District Judge OBERDORFER.

D.H. GINSBURG, Circuit Judge:

The appellant in this diversity case, the E.F. Hutton Group, Inc. (Hutton Group) is a holding company of which E.F. Hutton and Company, Inc. (Hutton Company), a securities broker, is a wholly owned subsidiary. Appellee John M. Pearce has at all relevant times been a registered representative employed by the Hutton Company as a branch manager at its offices first in Bethesda, Maryland and then in St. Louis, Missouri. In those offices, Pearce was responsible for the branches' cash management practices, among other things.

In May 1985, Hutton Company pled guilty to 2,000 counts of mail and wire fraud in connection with its cash management practices. In the aftermath of the plea and the publicity surrounding it, Hutton Group engaged Griffin B. Bell to conduct an investigation of Hutton Company's cash management practices and to identify the individuals responsible for the acts leading up to Hutton Company's guilty plea. In September 1985, Bell publicly released his report at a press conference at which, in response to questions, he explained and elaborated upon the report.

In January 1986, Pearce sued Hutton Group and Bell, invoking the diversity jurisdiction of the District Court and alleging that various statements contained in the Bell report or that Bell made at the press conference defamed him and invaded his privacy by portraying him in a false light. We need not repeat here the particulars of the statements so charged; their gist, according to Pearce's complaint, was to portray him as one of a small number of Hutton Company employees who, by departing from established company policy, was responsible for Hutton Company's pleading guilty to the 2,000 counts of mail and wire fraud.

---

** Of the United States District Court for the District of Columbia, sitting by designation pursuant to 28 U.S.C. § 292(a).

Hutton Group promptly moved to stay "all proceedings," including the action against Bell as well as itself, pending arbitration pursuant to the rules of the New York Stock Exchange. Hutton Group argued that it had a right to go to arbitration pursuant to the employment contract between Pearce and Hutton Company. It is undisputed that in order to obtain employment with Hutton Company, Pearce had submitted to the Exchange a so-called U–4 form, or "Uniform Application for Securities and Commodities Industry Representative and/or Agent." Pearce thereby agreed that:

[A]ny controversy between me and any member or member organization or *affiliate* or subsidiary thereof arising out of my employment or the termination of my employment shall be settled by arbitration at the instance of any such party in accordance with the arbitration procedure prescribed in the Constitution and Rules then obtaining of the New York Stock Exchange, Inc.

(Emphasis added).

Article XI, § 1 of the Constitution of the Exchange provides that "any controversy between a member ... and any other person arising out of the business of such member ... shall at the instance of any such party be submitted for arbitration" according to the Constitution and rules of the Exchange. Rule 600(a) of the Exchange provides:

Any dispute, claim or controversy between a customer or *non-member* and a member, allied member, member organization and/or *associated person arising in connection with the business of such* member, allied member, member organization and/or *associated person in connection with his activities as an associated person* shall be arbitrated under the Constitution and Rules of the New York Stock Exchange, Inc. as provided by any duly executed and enforceable written agreement or upon the demand of the customer or non-member.

(Emphasis added).

On April 16, 1986, the District Court denied the Hutton Group's motion to stay the proceedings pending arbitration. Record Excerpts (R.E.) at 117. After a review of recent cases arising from the arbitration provisions of the U–4 form and of the Exchange rules, the District Court held that Rule 600 does not mandate arbitration in this case. Although it found that plaintiff is an "associated person" and Hutton Group is a "non-member" as those terms are used in the Exchange's rules, the Court held that because plaintiff's claim is "based on activities not involving customers and merely the Company's own accounts," it does not arise "in connection with his activities as an associated person" and is thus outside the scope of Rule 600. *Id.* at 123.

Turning to the "much more difficult issue" raised by the terms of the U–4 form that plaintiff signed, the District Court offered three reasons for doubting that plaintiff's claims are subject to arbitration. First, the District Court viewed the cause of action as running "primarily against defendant Bell." *Id.* Hutton is liable, if at all, because Bell was acting as its agent. Second, since Hutton Group is neither plaintiff's employer nor a member of the Exchange, "even were this action viewed as one primarily against the Group, the action would be subject to arbitration only if the Group was an 'affiliate' within the meaning of the U–4 provision quoted above." *Id.* at 124. Reading Exchange Rule 321 to define an affiliate as an entity in which an Exchange member holds at least a 40% interest, the Court determined that Hutton Group is not an affiliate of the member firm Hutton Company within the intendment of the U–4 arbitration agreement. Finally, the District Court expressed its concern that "allowing the Group to arbitrate and staying Bell's case pending arbitration would give Bell an unfair advantage in the eventual trial before the court between Bell and plaintiff." *Id.* Here the Court may have shared the concern, urged by the plaintiff, that Bell would be made privy to the trial tactics, framing of questions, and arguments he would later face if he could first observe "a mini-trial

of the issues his counsel terms 'virtually identical' to those which Mr. Bell would thereafter litigate as a defendant." [1]

On June 10, the District Court granted Hutton Group's motion for a stay pending appeal and denied Bell's motion for a similar stay. R.E. at 129. The District Court found that Hutton Group's arguments that Pearce's claims were subject to arbitration raised "issues ... of first impression," and that Hutton Group would suffer substantial harm if Pearce's action were not stayed pending appeal and the District Court was later reversed. On the other hand, the District Court thought it "clear that there is no arbitration agreement between plaintiff and Bell," and thus, saw no reason that the case against Bell could not proceed to trial. *Id.* at 133.

The issues raised by Hutton Group's arguments are indeed ones of first impression in this Circuit. In resolving them, we are aided by the District Court's own effort to sort out the relevant precedents available from other Circuits, and by the brief of *amicus* Securities Industries Association, which did not participate before the District Court. Acknowledging that the dispositive issue is a close one, we nonetheless reverse the judgment below and hold that Pearce's claim against Hutton Group is subject to arbitration. Litigation of that claim must be stayed pending the outcome of arbitration.

## I

 Arbitration is fundamentally a creature of contract. See *Dean Witter Reynolds, Inc. v. Byrd,* 470 U.S. 213, 105 S.Ct. 1238, 84 L.Ed.2d 158 (1985). The Federal Arbitration Act makes written agreements to arbitrate "valid, irrevocable, and enforceable" on the same terms as other contracts. 9 U.S.C. § 2. Whereas doubts about the meaning of a contract are generally to be resolved by reference to the intention of the parties, the federal policy favoring arbitration counsels that doubts

about the intended scope of an agreement to arbitrate be resolved in favor of the arbitral process. *Moses H. Cone Hospital v. Mercury Construction Corp.,* 460 U.S. 1, 24, 103 S.Ct. 927, 941, 74 L.Ed.2d 765 (1983). The rationale for this policy is at its strongest where the arbitration will be governed by procedures specifically tailored to the context from which the agreement to arbitrate arises, and will be conducted by arbitrators who are expert in the norms and practices of the relevant industry. Labor arbitration is one such context. The arbitration system of the New York Stock Exchange is another.

Moreover, as the Supreme Court recently noted, the Securities and Exchange Commission (SEC) has "expansive power to ensure the adequacy of the arbitration procedures employed by [a self-regulating organization]" such as the Exchange. *Shearson/American Express, Inc. v. McMahon,* — U.S. ——, ——, 107 S.Ct. 2332, 2341, 96 L.Ed.2d 185 (1987). Indeed, the New York and American Exchanges and the National Association of Securities Dealers have all adopted the Uniform Code of Arbitration, which was drafted at the urging of the Securities and Exchange Commission (SEC). *Id.,* Brief of SEC as *amicus curiae,* at 17. We note also the affidavit of Edward Morris, Arbitration Director of the New York Stock Exchange, Inc., which states that "there is nothing unique about Mr. Pearce's claims of defamation and invasion of privacy that would prevent them from being arbitrated before NYSE. Exchange arbitrations involve a myriad of contract and tort claims including claims for defamation.... [T]he arbitrators who serve on the Exchange arbitration panels are experienced, competent individuals who are fully capable of examining, evaluating and deciding the type of claims being asserted by Mr. Pearce." R.E. at 112.

 Congress has decreed a very specific corollary to the general federal policy favoring arbitration agreements. Under

---

1. Plaintiff's Opposition to Motions of Defendants to Stay All Proceedings Including Discovery Pending Appeal at 11 (footnote omitted). The District Court also noted that if Bell suc-

cessfully defends the Court case, the arbitration against Hutton Group may well be rendered moot.

the Arbitration Act, which applies to contracts "evidencing a transaction involving commerce" and containing a provision for arbitration, 9 U.S.C. § 1, a federal district court "upon being satisfied that the issue involved [in the suit before it] is referable to arbitration under such an agreement," must on application stay the trial pending arbitration. 9 U.S.C. § 3. Thus, if arbitration is indicated by the contract, then a stay is required by the statute. As the District Court implicitly recognized, therefore, the only question before it was whether Pearce had agreed to arbitrate his claim against Hutton Group. We can find that he did so only if we determine that the arbitration Hutton Group seeks is within the scope of both the U–4 agreement between Pearce and Hutton Group and Rule 600, which it incorporates by reference.

## II

No party to this appeal disputes the District Court's finding that Pearce is an "associated person," and that the Hutton Group is a "non-member" within the meaning of NYSE Rule 600(a). Hutton argues that the District Court erred, however, in holding that Pearce's claim did not arise "in connection with his activities as an associated person." The District Court so held because Pearce's "claim is based on activities not involving customers and merely the Company's own accounts." R.E. at 123. The Hutton Group argues, in essence, that because Pearce was employed as a Branch Office Manager, and it was in that capacity that he had some responsibility for Hutton Company's cash management practices, Pearce's claims do arise in connection with his activities as an associated person.

◼ It is clear that a Branch Office Manager is an "associated person." That term is not defined in the NYSE rules, but its use therein is clearly meant to draw on the definition found in the Securities Exchange Act of 1934, which defines it to mean "any partner, officer, director, or branch manager" of a member firm. 15 U.S.C. § 78c(21). Therefore, if Pearce's claim arises "in connection with his activities as [a branch manager]," it is subject to arbitration under Rule 600.

Pearce's claim arises most immediately from Bell's statements, but those statements were clearly made in connection with Pearce's activities as a Branch Office Manager. Bell's report describes Hutton Company's cash management system as "the process by which Hutton [Company] collects and obtains use of the funds received on a daily basis by [Hutton Company's] several hundred branch offices located throughout the United States. The system involves the transfer of funds from branch office bank accounts to regional accounts to national accounts where the funds can be used by the company." R.E. at 89. A Branch Office Manager thus had an integral role in—but not necessarily responsibility for—the practices, and abuses, leading to Hutton Company's guilty plea and to Bell's report and statements.

We are aware of no reason for reading the scope of Rule 600 so narrowly as to exclude the activities of a Branch Office Manager insofar as they do not involve customers but merely the member firm's own accounts. Pearce argues that "[n]one of the purposes for which the NYSE exists, as reflected in its Constitution and Rules, are [sic] involved directly or indirectly in [his] claims against Hutton Group in this law suit. John Pearce's claims bear no connection with any business of the NYSE." Brief for Appellee at 8. The NYSE's interest in a dispute between a member firm and an associated person is admittedly more obvious when the dispute concerns a customer's account than it is when a member firm's bank accounts are involved. As an association of member firms, however, the Exchange expresses each firm's interest that every other member firm conduct its business in a manner that inspires and warrants public confidence in all members. In other words, any one member's reputation tends to reflect on the others; this externality gives each an interest in the other's standards of conduct and in an expert and expeditious resolution of claims against them. The Exchange's interest in its member firms' busi-

ness practices surely extends beyond their handling of customer accounts. Hutton Company's pleading guilty to 2,000 counts of mail and wire fraud, the victims of which were scores—if not hundreds—of banks at which branch office accounts were maintained, was surely an embarrassment to the Exchange and to its member firms.[2] Indeed, virtually any activity that would reflect on a member firm's business reputation, well short of 2,000 felony pleas, would arguably fall within the Exchange's interest and thus, within the probable intent and meaning of Rule 600.

Perhaps we need not subscribe to so far-reaching a proposition today in order to resolve this aspect of the present case. For while Rule 600 applies, by its terms, to "any dispute" arising in connection with the activities of an associated person, acting in that capacity, Hutton is willing to accept Pearce's suggestion that we apply an "Exchange relatedness" test to bring the Rule within reasonable bounds. Brief for Appellant at 14–15. Since the underlying issue here is one of contractual interpretation, this concession by Hutton Group is of particular relevance; insofar as the parties agree on the meaning of their contract, the court has no occasion to interpret it. Not surprisingly, however, Hutton Group and Pearce have very different ideas about how the test of "Exchange relatedness" applies to the facts of this case.

■ The test itself derives from the opinion in *Paine, Webber, Jackson & Curtis v. Chase Manhattan Bank, N.A.*, 728 F.2d 577 (2d Cir.1984), in which a NYSE member sued a bank and its former vice president, alleging that they had fraudulently induced the plaintiff to extend credit to, and to trade in government securities with, a company that later declared bankruptcy, to the member firm's $1.5 million loss. The defendants moved for a stay of the suit pending arbitration pursuant to the NYSE rules. The Court of Appeals upheld the District Court's denial of that motion, stating that the NYSE arbitration rules "governing member-non-member controversies should be limited, at least in cases such as the instant one in which the alleged improper conduct is on the part of the non-member, to controversies arising out of the member's Exchange related business." Otherwise, the court reasoned, the NYSE rules "would require every Exchange member, at the insistence of a non-member, to submit to exchange arbitration every dispute it has with any entity in the world, no matter what the subject matter." *Id.* at 580. In a footnote, the Court expressly noted that it was "not deciding today whether a non-member could compel arbitration of a dispute in an action in which the alleged wrongdoer is an Exchange member and the transaction is not related to Exchange business. We acknowledge that, depending on the facts, such a situation might come within the purview of an arbitration agreement adopted in light of the Congressional mandate to exchanges of self-regulation." *Id.* at 580 n. 5.

Pearce, as an associated person, argues that he is situated in a position analogous to that of Paine Webber in the Second Circuit case. A non-member, Hutton Group, is seeking to compel him to arbitrate claims that, he says, did not arise in connection with his activities as an associated person and do not have "a connection with exchange related business." Brief for Appellee at 15. The first point we must reject, as we have already seen that cash management—or mismanagement, as the case may be—is squarely within the scope of a Branch Office Manager's activities. The second point we reject as well, for we have no reason to believe that the parties intended the phrase "in connection with his activities as an associated person" employed in Rule 600 to embrace a criterion of "Exchange relatedness" so narrow that the cash management practices of a Branch Office Manager fall outside its scope. We see no basis for limiting the meaning of

**2.** It is significant that the Department of Enforcement of the NYSE commenced an investigation on May 17, 1985, into the activities of Hutton Company and its employees that had led to the Company's guilty plea. *See* Affidavit of James A. Tricarico, Jr., Senior Vice President and Senior Associate General Counsel of E.F. Hutton & Company, Inc., R.E. at 86; Letter of Rex M. Mixon, Jr., Senior Special Counsel, NYSE, Bureau of Enforcement, R.E. at 105.

Rule 600 specifically to activities involving customer accounts or to broker-dealer functions.

Pearce's attempt to analogize his position to that of Paine Webber fails for another reason, as well. The holding in *Paine Webber* concerning the requirement of exchange-relatedness is confined to cases "in which the alleged improper conduct is on the part of the non-member." 728 F.2d at 580. That the court so limited itself is understandable, for it would have been anomalous to allow a bank with no relationship to the Exchange to compel an Exchange member to arbitrate a dispute concerning actions of the bank. The bank was not a party to any agreement to arbitrate, and its conduct is beyond the Exchange's regulatory powers. By contrast, no such anomaly arises if Pearce must submit his claims against Hutton Group to arbitration because Pearce, an associated person subject to regulation by the Exchange, is the alleged wrongdoer—not with respect to defamation or invasion privacy, of course, but as to the underlying activity that allegedly makes Bell's statements false and actionable.

### III

■ Pearce also argues that the U–4 agreement does not apply to the current dispute, as the District Court held. Contrary to the conclusion reached by the District Court, however, we think that Hutton Group is an "affiliate" of Hutton Company. NYSE Rule 321, which the lower court relied upon in concluding that Hutton Group is not an affiliate of Hutton Company, does not even purport to define that term. Rather, it describes the mechanism by which a member of the Exchange can form an "affiliated company," which is an entity empowered to act in certain ways. Nothing in Rule 321 states or implies that the "affiliated companies" that may be created pursuant to that rule are the only kind of "affiliates" recognized by the U–4 arbitration clause. Indeed, the U–4 form suggests the contrary by speaking in terms of controversies between the signatory to the agreement and "any member, member or-

ganization or *affiliate* or *subsidiary* thereof...." (emphasis added). The District Court's reading of "affiliate" to mean a company in which a member firm has a certain ownership interest, but not vice-versa, would render redundant the two words emphasized here.

■ Pearce further argues that his dispute with Hutton Group did not arise out of his employment and, therefore, does not come within the terms of the U–4 form. In essence, he equates "arising out of [one's] employment" with the highly restricted definition of "Exchange related" he urged us to adopt in construing Rule 600. So narrow a reading of such encompassing language is unwarranted in our view. We agree that it would probably be unfair—because beyond the probable contemplation of the parties to the U–4 agreement—to require an associated person to submit literally *any* dispute arising out of his employment to arbitration, especially claims not deriving in some fashion from the occupational duties as *an associated person.* If an associated person slips and falls in the member firm's premises, his negligence claim against the firm raises no issues that would not also arise if a secretarial or janitorial worker has such a fall; it would be odd, therefore, if the parties intended to require the associated person to submit a dispute over such a mishap to NYSE arbitration, since the employer's membership in the NYSE is a fortuity, no more relevant to the slip-and-fall of an employee who is an associated person than to that of another employee. The phrase "arising out of my employment" is therefore more sensibly read as "arising out of my employment *as an associated person.*" This limitation does not save Pearce's argument, however, since his dispute with Hutton Group clearly concerns allegations about his performance as a Branch Office Manager.

The cases cited by Pearce concerning the meaning of the phrase "arising out of" employment are not to the contrary. *See Morgan v. Smith Barney, Harris Upham & Co.*, 729 F.2d 1163 (8th Cir.1984); *Aspero v. Shearson American Express, Inc.*, 768 F.2d 106 (6th Cir.), *cert. denied*, 474 U.S.

1026, 106 S.Ct. 582, 88 L.Ed.2d 564 (1985). In *Morgan,* an action for prima facie tort and slander, the Eighth Circuit held that three of the four counts of a former account executive's complaint against his employers were arbitrable under the U–4 agreement, as it incorporates NYSE Rule 347.[3] The counts held arbitrable were: (1) that one of his superiors made defamatory statements to the plaintiff's former customers; (2) that the same superior attempted to "scrounge up" complaints from the plaintiff's former customers concerning his handling of their investments; and (3) that his superiors falsely informed persons that his Missouri broker's license was suspended. But the court held that the claim (4) that the employer told fellow office workers that Morgan stole things from their desks at night was not arbitrable. The court stated that "[u]nlike the previous three counts, the connection between this dispute and Morgan's employment is tenuous. No customers or securities agencies are implicated, and no significant issue of Morgan's job performance *qua* broker is implicated." 729 F.2d at 1168. Pearce would conclude from this that disputes do not arise out of his employment unless they involve customers or broker-dealer functions. The Eighth Circuit did not purport to furnish a complete definition of "arising out of the employment," however; it was simply contrasting the final claim with the previous ones. Even in the Eighth Circuit's terms, moreover, Pearce's claims of defamation and false light invasion of privacy do raise a "significant issue of [his] job performance," as Hutton Group may argue truth as its defense. Similarly, in *Aspero,* the court's conclusion that each of Aspero's claims depended upon a determi-

nation of her performance as a broker and, therefore, arose out of her employment, does not warrant the conclusion that any claim not depending upon a determination of one's performance as a broker does not arise out of one's employment as an associated person.[4]

Finally, we note the recent decision in *McGinnis v. E.F. Hutton and Co., Inc.,* 812 F.2d 1011 (6th Cir.1987), issued shortly after oral argument in this case. The Sixth Circuit's decision is closely on point with today's holding, and in agreement in all respects.

For the foregoing reasons, we reverse the judgment below and hold that, because Pearce's claims against Hutton Group are subject to arbitration, litigation of that claim must be stayed pending the outcome of arbitration.

*Reversed.*

OBERDORFER, District Judge, concurring:

I have misgivings about a "boiler plate" arbitration clause which requires an applicant, as a pre-condition of employment in an extensive specialized industry, to waive his Seventh Amendment right to a jury trial in a common law defamation and privacy suit such as is before us now. As the Supreme Court reminded us in a decision preserving jury trials in certain stockholder derivative suits:

> The Seventh Amendment ... entitled the parties to a jury trial in actions for damages to a person or property, for libel and slander, for recovery of land, and for conversion of personal property.

---

3. "Any controversy between a registered representative and any member or member organization arising out of the employment or termination of employment of such registered representative by and with such member or member organization shall be settled by arbitration...."

4. In view of our holding that Rule 600 requires arbitration of the claim against Hutton Group, we cannot credit the District Court's concerns that arbitration is inappropriate because the action runs primarily against Bell, and because allowing Hutton Group to arbitrate and staying Bell's case would give Bell an unfair advantage

at trial. If Pearce makes a valid claim against Hutton Group, it is immaterial that arbitration of that action will likely involve an examination of Bell's conduct. Regarding the timing problem and possible resulting unfairness, we know of no stay in effect with respect to Pearce's action against Bell, and it is by no means certain that the arbitration of the claims against Hutton Group will be completed before the claims against Bell are tried. Moreover, we doubt that our decision would be different were it otherwise.

*Ross v. Bernhard,* 396 U.S. 531, 533, 90 S.Ct. 733, 735, 24 L.Ed.2d 729 (1970) (footnote omitted).

Moreover, in approving arbitration of disputes arising out of alleged violations of the federal anti-trust laws, the Supreme Court has further admonished us that

> Of course, courts should remain attuned to well-supported claims that the agreement to arbitrate resulted from the sort of fraud or overwhelming economic power that would provide grounds "for the revocation of any contract." 9 U.S.C. § 2....

*Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.,* 473 U.S. 614, 627, 105 S.Ct. 3346, 3354, 87 L.Ed.2d 444 (1985).

The District of Columbia Uniform Commercial Code authorizes a court to find "as a matter of law" that a contract clause was "unconscionable" when made. 28 D.C. Code § 28:2–302(1). Also, a court "may so limit the application of any unconscionable clause as to avoid any unconscionable result." *Id.* Thus, if it were established that it is "unconscionable" to deny to plaintiff his constitutional right to a jury trial of his common law tort suit against both defendants in the circumstances here, we could fully honor plaintiff's demand for a jury trial without disturbing arbitration of essentially "exchange-related" disputes. *See Fuller v. Guthrie,* 565 F.2d 259 (2d Cir. 1977) (clause requiring arbitration of claims, disputes or controversies "involving the musical services arising out of or connected with" a contract, did not require arbitration of a promoter's slander claim against a performer on account of statements that he made to an audience during a concert).

However, the plaintiff here raised no constitutional question. Nor did he invoke the principles relating to enforceability of disadvantageous contracts resulting from "overwhelming economic power." Moreover, the District Court's undertaking to entertain the plaintiff's claims against defendant Bell without awaiting arbitration effectively honors any constitutional right of plaintiff to a jury trial. Since there is no constitutional or contract issue before us

and since we should not raise them on our own motion, I concur in Judge Ginsburg's opinion that the plaintiff's claim against defendant Hutton must be arbitrated while his claim against defendant Bell is being litigated. I am impressed by the fact that the Exchange has been investigating the conduct which is the subject matter of the report that plaintiff claims to be defamatory. *See* Affidavit of James A. Tricarico, Jr., Senior Vice President and Senior Associate General Counsel of E.F. Hutton & Company, Inc., dated February 14, 1986; Letter of Rex M. Mixon, Jr., Senior Special Counsel, New York Stock Exchange, Bureau of Enforcement, dated May 17, 1985; *see also* Affidavit of Edward Morris, Arbitration Director of the New York Stock Exchange, Inc., dated February 18, 1986. The active interest of the Exchange in plaintiff's business practices is strong, objective evidence that the underlying dispute about them is "exchange-related." *See Paine, Webber, Jackson & Curtis v. Chase Manhattan Bank,* 728 F.2d 577, 580 n. 5 (2d Cir.1984). Accordingly, I concur in the judgment and the opinion.