These cases present two issues:
1. Whether the defendants' appeals from orders denying arbitration of the plaintiff's defamation claim were required to be filed within 14 days or within 42 days under the provisions of Rule 4, A.R.App.P., and
2. Whether a tort claim for defamation was included within the scope of the parties' agreement to arbitrate.
M. Brooks Clark, a stockbroker, sued Richard Thompson, a fellow stockbroker, and A.G. Edwards Sons, Inc., Thompson's employer, alleging defamation based upon comments made by Thompson and then repeated by A.G. Edwards in a newspaper advertisement. As a stockbroker, Clark had signed an agreement to arbitrate any dispute between him and another broker or firm. The defendants moved the *Page 359 
trial court for a stay and for an order compelling Clark to submit to arbitration; the trial court denied the motion. Both defendants sought review.[1]
The allegedly defamatory remarks made by Thompson were to the effect that Clark had pleaded "nolo contendere" to criminal charges of securities fraud in Kentucky, that Clark had pleaded "no contest" to criminal charges involving bad tax-free investments in Kentucky, that as a result of such behavior, Clark had been "run out of the State of Kentucky," and that Clark was "a crook" and was "dishonest." These statements were allegedly made by Thompson to acquaintances of Clark and to some of Clark's clients during a breakfast at the Grace Episcopal Church in Anniston, Alabama; none of the people who heard these statements had solicited them from Thompson. Clark has never been employed by A.G. Edwards, and there have never been business dealings between Clark and Thompson. Clark demanded that Thompson retract these statements; Thompson never did. Clark sued Thompson on August 11, 1988. A.G. Edwards offered to issue a public retraction, and Clark agreed that a public retraction would be appropriate but warned A.G. Edwards not to do further damage to his reputation when making the retraction. A.G. Edwards then published a "retraction" in theAnniston Star on August 14, 15, and 19, 1988, which repeated the allegedly defamatory remarks, and which publication, Clark claimed, further damaged his reputation. On September 20, 1988, after the publication of its "retraction," Clark amended his complaint to include A.G. Edwards as a defendant.
When Clark associated with his employer, he signed a document, a "Form U-4," that included the following language:
 "I agree to arbitrate any dispute, claim or controversy that may arise between me and my firm, or a customer, or any other person, that is required to be arbitrated under the rules, constitutions, or by-laws of the organizations with which I register, as indicated in Question 8."
Clark's response to Question 8 on that document was that he would be registered with the National Association of Securities Dealers ("NASD"). Section 8 of the NASD "Code of Arbitration Procedure" provides as follows:
 "(a) Any dispute, claim or controversy eligible for submission under Part I of this Code between or among members and/or associated persons, and/or certain others, arising in connection with the business of such member(s) or in connection with the activities of such associated person(s), shall be arbitrated under this Code, at the instance of:
"(1) a member against another member;
 "(2) a member against a person associated with a member or a person associated with a member against a member, and,
 "(3) a person associated with a member against a person associated with a member."
Under Part I of the NASD Code, the section entitled "Matters Eligible for Submission" reads, in part, as follows:
 "This Code of Arbitration Procedure is prescribed and adopted . . . for the arbitration of any dispute, claim or controversy arising out of or in connection with the business of any member of the Association, with the exception of disputes involving the insurance business of any member which is also an insurance company:
"(1) between or among members; *Page 360 
 "(2) between or among members and public customers, or others; and,
 "(3) between or among members, registered clearing agencies with which the Association has entered into an agreement to utilize the Association's arbitration facilities and procedures, and participants, pledgees or other persons using the facilities of a registered clearing agency, as these terms are defined under the rules of such a registered clearing agency."
Thompson admitted, in deposition, that he and Clark had never had any business transactions between them and that there had never been any dispute between the two men about any securities transaction or any investment banking transaction.
 I
Before we can address the merits, we must address a procedural issue, that is, whether the appeals were timely filed. All parties agree, as do we, that the defendants do indeed have a right to appeal the trial court's denial under9 U.S.C. § 15, the recent amendment to the Federal Arbitration Act ("FAA"); but the parties stoutly dispute whether the appeals were timely filed. In fact, Clark has made a motion to dismiss the appeals on the ground that they were untimely, and to deny the writs of mandamus because the petitioners had a right to appeal (which, Clark argues, they forfeited) and mandamus, therefore, cannot be substituted therefor.
Under Rule 4, A.R.App.P., most appeals must be filed within 42 days, but appeals from interlocutory orders involving injunctions must be filed within 14 days. As a matter of policy, how should this Court treat appeals from a denial of a motion to compel arbitration? The question is one of first impression. An order refusing to stay a lawsuit pending arbitration is not a final judgment such as to trigger the 42-day time limit, yet it is also not an interlocutory injunction-related order, although it is in the nature of an interlocutory injunction-related order because it involves a request to compel a party to arbitrate. Both appeals clearly were filed within the 42-day period, but both clearly were filed beyond the 14-day period.
At one time, the federal courts treated orders denying arbitration as injunctions in order to allow a party to appeal under 28 U.S.C. § 1292(a)(1); this was known as the "Enelow-Ettelson doctrine," after the cases that set forth this rule, Enelow v. New Life Ins. Co.,293 U.S. 379, 55 S.Ct. 310, 79 L.Ed. 440 (1935), and Ettelson v.Metropolitan Life Ins. Co., 317 U.S. 188, 63 S.Ct. 163,87 L.Ed. 176 (1942). In 1988, however, in Gulfstream AerospaceCorp. v. Mayacamas Corp., 485 U.S. 271, 108 S.Ct. 1133,99 L.Ed.2d 296 (1988), the Supreme Court of the United States held that this legal fiction was no longer valid. Federal courts then ruled that neither a denial nor a grant of such a motion could be appealed. Congress then amended the FAA to add § 15 to allow an appeal, but only from a denial of a motion to compel arbitration; a grant of a motion to compel arbitration cannot be appealed, as Congress favors arbitration.
A.G. Edwards and Thompson have a right to appeal the denial of arbitration. 9 U.S.C. § 15 provides:
"(a) An appeal may be taken from —
"(1) an order —
 "(A) refusing to stay any action under section 3 of this title,
 "(B) denying a petition under section 4 of this title to order arbitration to proceed. . . ."
After Ex parte Alabama Oxygen Co.,452 So.2d 860 (Ala. 1984), this Court reviewed orders denying or granting motions to compel arbitration by way of petition for a writ of mandamus. See Exparte Thompson McKinnon Sec., Inc.,517 So.2d 614 (Ala. 1987), and Ex parte Warrior Basin GasCo., 512 So.2d 1364 (Ala. 1987). In cases where the FAA is applicable, § 15 now gives the right to appeal an order denying arbitration, and an appeal is now the proper procedure by which to challenge a denial of a motion to compel arbitration.
Because the appellants have an appeal as a matter of right, the question is whether this order denying arbitration is *Page 361 
similar to an interlocutory order refusing an injunction for the purposes of determining the time within which an appeal must be filed. An order denying arbitration has always been considered an interlocutory order, and § 15 (the amendment to the FAA) does nothing to alter the nature of the order as non-final. Rule 4, A.R.App.P. allows 42 days for appeal to this Court "in all cases" — except as otherwise provided herein [i.e., in Rule 4]." There is no exception in Rule 4 for appeals from orders denying motions to compel arbitration. Because a denial of arbitration is not an interlocutory order regarding an injunction, and in light of the strong federal policy favoring arbitration, we hold that the 42-day time limit for an appeal is applicable to appeals from an order denying a motion to compel arbitration under9 U.S.C. § 15. Thus, both defendants' appeals were timely. Since we hold that the appeals were timely, the petitions for writs of mandamus are moot.
 II
In the trial court, Clark did not challenge themaking of the agreement to arbitrate, rather he challenged the scope of that agreement. The FAA, "reversing centuries of judicial hostility to arbitration agreements, was designed to allow parties to avoid 'the costliness and delays of litigation,' and to place arbitration agreements 'upon the same footing as other contracts. . . .' "Scherk v. Alberto-Culver Co., 417 U.S. 506,510-11, 94 S.Ct. 2449, 2452-53, 41 L.Ed.2d 270
(1974) (quoting H.R. Rep. No. 96, 68th Cong., 1st Sess., 1, 2 (1924)).
The NASD is a self-regulated organization under § 28(b) of the Securities Exchange Act of 1934,15 U.S.C. § 78bb(b), and federal courts have held that the rules of such organizations constitute a contract between all the members of the organizations and associated persons. SeeCreative Sec. Corp. v. Bear Stearns Co.,671 F. Supp. 961, 966 n. 7 (S.D.N.Y. 1987). This Court has recently upheld the enforceability of arbitration agreements between brokerage firms and registered representatives. Ex parteMcKinney, 515 So.2d 693 (Ala. 1987). McKinney had signed, among other forms, the same Form U-4 that Clark signed in this case. This Court stated:
 " 'The constitution and rules of a stock exchange constitute a contract between all members of the exchange with each other and with the exchange itself
. . . .
 " 'Since the rules of the Exchange "constitute a contract between the members, the arbitration provisions which they embody have contractual validity. . . ." The Exchange provisions requiring arbitration constitute an agreement to arbitrate which is binding upon both [parties].' "
515 So.2d at 698-99 (quoting Coenen v. R.W. Pressprich Co., 453 F.2d 1209, 1211-12 (2d Cir. 1972), cert. denied,406 U.S. 949, 92 S.Ct. 2045, 32 L.Ed.2d 337 (1972)). As an "associated person" of a member of the NASD, Clark agreed to be bound by the NASD's rules, including the rules pertaining to arbitration.
Two general principles govern the determination of arbitrability:
 "Two principles guide our determination. First, the duty to arbitrate is a contractual obligation: only those disputes which a party has agreed to submit to arbitration may be so resolved. [Citations omitted.] Arbitrability is thus a matter of contract interpretation. We must ascertain whether the parties intended the particular dispute to be arbitrated as evidenced by the language contained in the agreement. The second principle commands that when contract language is ambiguous or unclear, a 'healthy regard' for the federal policy favoring arbitration requires that 'any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration.' "
Morgan v. Smith Barney, Harris Upham Co.,729 F.2d 1163, 1165 (8th Cir. 1984) (quoting Moses H. Cone MemorialHosp. v. Mercury Constr. Co., 460 U.S. 1, 24-25,103 S.Ct. 927, 941-42, 74 L.Ed.2d 765 (1983)).
Section 8 of the NASD Code provides that disputes arising in connection *Page 362 
with the business of members or the activities of associated persons are appropriately subject to arbitration. A.G. Edwards argues that since a corporation can act only through its employees and that having employees is part of being in "business," any claim brought against A.G. Edwards by someone such as Clark is a claim arising from its "business" as a member of NASD and therefore must be arbitrated. We disagree. There is no agreement to arbitrate disputes of the type presented by Clark's complaint; the claim of defamation did not arise out of or in connection with any business between Clark and the defendants.
Arbitration is a matter of contract, and a party cannot be required to submit to arbitration any dispute that he has not agreed to submit. AT T Technologies, Inc. v.Communication Workers of America, 475 U.S. 643,106 S.Ct. 1415, 89 L.Ed.2d 648 (1986); United Steelworkers of Americav. Warrior Gulf Navigation Co., 363 U.S. 574,80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960); Montgomery Mailers' Union No.127 v. The Advertiser Co., 827 F.2d 709, 712 (11th Cir. 1987); see also Ex parte Morgan Keegan Co., Inc.,555 So.2d 182 (Ala. 1989). A court must determine "whether there was a valid, enforceable arbitration agreement that applied to the dispute." Ex parte McKinney,515 So.2d 693, 694 (Ala. 1987). While recognizing the federal policy favoring enforcement of arbitration agreements, courts have refused to "stretch" arbitration agreements to apply to matters clearly not contemplated by the parties at the time of contracting. See Seaboard Coast Line R.R. v. Trailer TrainCo., 690 F.2d 1343, 1352 (11th Cir. 1982). Even a broad arbitration clause is not limitless. Montgomery Mailers'Union, 827 F.2d at 714. A case that illustrates that even broad arbitration clauses do not cover intentional tort claims is Armada Coal Export, Inc. v. Interbulk, Ltd.,726 F.2d 1566 (11th Cir. 1984). There, the court said:
 "The authorities and Armada's arguments persuade us that Armada's claims for wrongful attachment and conversion are, indeed, proper issues for the judiciary rather than matters intended, under the terms of the charter party, for arbitration. While certainly there is a connection between Armada's claims and the charter party relationship between Armada and Interbulk — i.e., but for the two parties having entered into this business arrangement which was imperfectly performed, there would have been no wrongful attachment and conversion — such connection is not sufficiently close to constitute a dispute arising during the execution, or performance, of the charter party itself."
726 F.2d at 1568.
Section 8 of the NASD Code is included in Part II of that Code, labeled "INDUSTRY AND CLEARING CONTROVERSIES." Section 8 is intended to apply only to disputes related to the securities business. The fact that Thompson was employed by a securities firm does not mean that every tort he commits creates an arbitrable "Industry" or "Clearing" controversy.
The defendants cite First Investors Corp. v. AmericanCapital Financial Serv., Inc., 823 F.2d 307 (9th Cir. 1987), as a case requiring that tort claims be arbitrated; however, that case dealt with claims arising out of the defendant's alleged solicitation of First Investors' clients and employees. Obviously, that dispute arose out of the business of the two parties.
In Morgan, supra, cited by appellants, the plaintiff's complaint had several counts, but the court held that his defamation count did not fall within the arbitration agreement. The Eighth Circuit said:
 "The final count in Morgan's complaint alleges that Smith Barney personnel told Morgan's fellow office workers that he stole things from their desks at night. Unlike the previous three counts, the connection between this dispute and Morgan's employment is tenuous. No customers or security agencies are implicated, and no significant issue of Morgan's job performance qua broker is implicated."
729 F.2d at 1168. The analysis of Morgan was followed in Dean Witter Reynolds, Inc. v. Ness, 677 F. Supp. 866
(D.S.C. 1988), *Page 363 
wherein various tort claims, including a claim for defamation, of a former broker were held not to fall within the arbitration agreement.
Pearce v. E.F. Hutton Group, Inc., 828 F.2d 826
(D.C. Cir. 1987), is of no help to the defendants; they cite dicta in that case indicating that a defamation claim must be arbitrated, but the D.C. Circuit ordered arbitration in that case because the plaintiff's defamation claim raised a significant issue of his job performance while he was employed by E.F. Hutton. While the court did require arbitration of the defamation claim in Pearce, it stated:
 "We agree that it would probably be unfair — because beyond the probable contemplation of the parties to the U-4 agreement — to require an associated person to submit literally any
dispute arising out of his employment to arbitration, especially claims not deriving in some fashion from the occupational duties as an associated person. If an associated person slips and falls in the member firm's premises, his negligence claim against the firm raises no issues that would not arise if a secretarial or janitorial worker has such a fall; it would be odd, therefore, if the parties intended to require the associated person to submit a dispute over such a mishap to NYSE arbitration, since the employer's membership in the NYSE is a fortuity, no more relevant to the slip-and-fall of an employee who is an associated person than to that of another employee. The phrase 'arising out of my employment' is therefore more sensibly read as 'arising out of my employment as an associated person.' "
828 F.2d at 832 (emphasis original). Thus, the court inPearce recognized that the argument raised by the defendants here — that "any claim" means every claim — is not a proper interpretation of the contract language.
Surely, the parties could have never intended that they would arbitrate disputes regarding "wholly unexpected tortious behavior." See Fuller v. Guthrie, 565 F.2d 259, 261
(2d Cir. 1977). The NASD Code does not mandate arbitration for "any claim against a member," as the defendants would have us interpret it; it mandates arbitration of any claim "arising in connection with the business" of a member or "in connection with the activities" of an associated person. The NASD Code does not define "business," but it does define "Investment banking or securities business" as "the business, carried on by a broker or dealer, of underwriting or distributing issues of securities, or of purchasing securities and offering the same for sale as a dealer therein, or of purchasing and selling securities upon the order and for the account of others. . . ." "Member" is defined as "either any broker or dealer admitted to membership in the [National Securities Clearing] Corporation or any officer or partner of such a member. . . ." "Person associated with a member," which includes both Clark and Thompson, is defined as
 "every sole proprietor, partner, officer, director, or branch manager of any member, or any natural person occupying a similar status or performing similar functions, or any natural person engaged in the investment banking or securities business who is directly or indirectly controlling or controlled by such member. . . ."
Although the arbitration clauses in the NASD Code talk of "business," it is clear that all the persons that must abide by the arbitration clauses are defined in terms of participants in the "securities business." The defendants point out that the NASD Code sections dealing with arbitration once contained the phrase "securities business" but that the word "securities" had been dropped by an amendment, leaving those sections as they read today. However, the argument that the deletion of the word "securities" from the phrase "securities business" in the arbitration sections vastly broadens the scope of the arbitration clauses ignores the entire context of the NASD Code. By its very nature, the "business" of the members of the NASD is the trading of securities, and while arbitration clauses are to be interpreted broadly, they are not limitless and cannot be interpreted to matters that clearly fall outside the scope of the contract agreement.
Despite the facts that the allegedly defamatory remarks had some connection *Page 364 
with Clark's business as a stockbroker and that the remarks had an adverse effect on Clark's business, the fact remains that this alleged defamation did not arise in connection with any business between Clark and the defendants. This is not a case like those cited by the defendants wherein the plaintiff was either an employee or a former employee of the defendant or was involved in business transactions with the defendant. Perhaps if these remarks had occurred in the context of business dealings involving the defendants and Clark, the matter might have to be arbitrated under the language of the NASD Code, but that scenario is not the case before us. It is undisputed that Clark and the defendants had had no business dealings with each other.
 III
For the above reasons, the trial court was correct in denying the defendants' motions to compel arbitration of Clark's defamation claims. Therefore, the judgment of the trial court is affirmed.
88-1119 AFFIRMED.
88-1124 AFFIRMED.
88-1031 PETITION DISMISSED.
88-1135 PETITION DISMISSED.
HORNSBY, C.J., and JONES, ALMON, SHORES, HOUSTON, STEAGALL and KENNEDY, JJ., concur.
[1] Pursuant to a recent amendment to the Federal Arbitration Act (codified at 9 U.S.C. § 15) that allows an appeal from a denial of a motion to compel arbitration, the defendants both filed notices of appeal. After Gullstream Aerospace Corp.v. Mayacamas Corp., 485 U.S. 271, 108 S.Ct. 1133,99 L.Ed.2d 296 (1988), and prior to this amendment, a party did not have a right to appeal such an interlocutory decision by the trial court, and this Court had recognized a petition for a writ of mandamus as the proper route for obtaining review of such a denial. Thus, out of an abundance of caution, both defendants also filed petitions for writ of mandamus in the event this Court declined to recognize the newly granted right of appeal in this kind of case.