**SPEAR, LEEDS & KELLOGG, Plaintiff,**

v.

**CENTRAL LIFE ASSURANCE COMPANY, Alexander Hamilton Life Insurance Company of America, Inc. and Canada Life Assurance Company, Defendants.**

No. 94 Civ. 0868 (KTD).

United States District Court, S.D. New York.

March 30, 1995.

Dickstein, Shapiro & Morin, New York City (Howard Schiffman, Woody N. Peterson, Jeffrey A. Spector, of counsel), Washington, DC, and Rogers & Wells, New York City (John M. Quitmeyer, Barry W. Rashkover, of counsel), for plaintiff Spear, Leeds & Kellogg.

John J. Phelan, III, P.C., New York City and Weisenfels & Vaughan, P.C., Kansas City, MO (J. Michael Vaughan, of counsel), for defendants Central Life Assur. Co., Alexander Hamilton Life Ins. Co. of America, Inc., Canada Life Assur. Co.

*MEMORANDUM & ORDER*

KEVIN THOMAS DUFFY, District Judge.

Plaintiff Spear, Leeds & Kellogg ("SLK") seeks a preliminary injunction against three life insurance companies: Central Life Assurance Company, Alexander Hamilton Life Insurance Company of America, Inc., and Canada Life Assurance Company, (collectively referred to as "Defendants"). Plaintiff seeks to enjoin Defendants from compelling Plaintiff to submit to arbitration. For the reasons stated below, Plaintiff's motion for a preliminary injunction is granted.

Plaintiff is a registered futures commission merchant and a member of the New York Stock Exchange ("NYSE" or "Exchange"). As such, is subject to the Constitution of the New York Stock Exchange ("NYSE Constitution") and the Exchange Arbitration Rules ("NYSE Rules"). Defendants are life insurance companies who are not members of the NYSE. Pursuant the NYSE Constitution and Rules, Defendants filed an arbitration demand seeking recovery of monies they paid out on life insurance policies of a customer of SLK. Plaintiff claims that it is not subject to NYSE arbitration because it has no transactional nexus with Defendant, and therefore, the NYSE Constitution and Rules relied upon by Defendant do not apply.

Plaintiff opened a commodities account for Marvin Goodman in 1990. Prior to opening the account, SLK states that they conducted a background check on Goodman, and found no financial or regulatory problems. Plaintiff set up Goodman's account in the same way that Goodman's previous account with Balfour Maclaine Futures, Inc. ("Balfour"), also a NYSE member, was established. Goodman transferred his account from Balfour to Plaintiff. Goodman maintained various subaccounts with Plaintiff, all of which bore his name and social security number. Some of these subaccounts had debit bal-

ances and some had credit balances. According to Plaintiff, SLK sent these account statements on a regular basis to Goodman and to people specified by Goodman.

Goodman had also obtained life insurance policies from Defendants and others in excess of $23 million. Part of the applications for the life insurance required Goodman to supply Defendants with his financial statements. Apparently, Plaintiff's account statements were among those submitted by Goodman. Defendants supplied $3 million and upon Goodman's sudden death were required to pay $1.9 million to the policy beneficiaries. Many of the recipients of this money were clients of Goodman's for whom he had made various investments. Goodman apparently hid from his clients that their investments had lost money. According to Plaintiff, Goodman had been "doctoring" the account statements when he received them from SLK and sending out inaccurate statements to his clients. SLK alleges that they knew nothing of Goodman's actions until after his death. Defendants allege that Plaintiff either falsified the documents or knew of the falsification and seeks to hold SLK liable for the amounts paid out on the insurance policies. To this end, Defendants filed a "Statement of Claim" in an arbitration demand with the NYSE. The instant action to enjoin arbitration followed.

## DISCUSSION

The standard for granting a preliminary injunction is well settled in this Circuit. The plaintiff must show "(1) irreparable harm and (2) likelihood of success on the merits." *Reuters, Ltd. v. United Press Int'l, Inc.,* 903 F.2d 904, 907 (2d Cir.1990) (quoting *Coca-Cola Co. v. Tropicana Products, Inc.,* 690 F.2d 312, 314–15 (2d Cir.1982)). In the alternative, the plaintiff must show that there are "sufficiently serious questions going to the merits to warrant litigation and a balance of hardships in favor of the movant." *Roso-Lino Beverage Distributors v. Coca-Cola Bottling Co.,* 749 F.2d 124, 125 (2d Cir.1984).

If a court determines that a valid arbitration agreement does not exist or that the matter at issue clearly falls outside the substantive scope of the agreement, it is obliged to enjoin arbitration. *PaineWebber Inc. v. Hartmann,* 921 F.2d 507, 511 (3d Cir.1990). (hereinafter referred to as *"Hartmann"*). In the present case, there is no agreement between the parties, and thus, no arbitration clause to bind the parties. A party cannot be required to submit to arbitration any dispute which he has not agreed to so submit. *AT & T Technologies, Inc. v. Communications Workers of America, et al.,* 475 U.S. 643, 648, 106 S.Ct. 1415, 1418, 89 L.Ed.2d 648 (1986). A party so situated will suffer *per se* irreparable harm if a court compels the party to submit to arbitration when it has not agreed to do so. *See Hartmann,* 921 F.2d at 515. Never having agreed to arbitrate, SLK will suffer irreparable harm if it is forced to submit to arbitration.

The second factor to be considered on a preliminary injunction motion is whether Plaintiff has a likelihood of success on the merits. The determination of whether a matter is arbitrable is one to be made by the court. *Litton Financial Printing Division v. NLRB,* 501 U.S. 190, 208, 111 S.Ct. 2215, 2226, 115 L.Ed.2d 177 (1991). Both the Constitution and the Rules are clear and unambiguous as to the arbitration of disputes. The issue lies in whether there is a sufficient relationship between the member (Plaintiff) and the non-member (Defendants).

It is undisputed that Plaintiff never had any direct contact or business transaction with Defendants. Goodman obtained the life insurance policies independently of Plaintiff and without Plaintiff's knowledge. Defendants do not claim they were customers of Plaintiff.[1] Defendants do not claim there was any contractual relationship with Plaintiff. In fact, Defendants do not allege any contact with Plaintiff at all. Rather, Defendants claim that their reliance on falsified documents, whether by the fraudulent conduct of Goodman or that of Plaintiff, makes Plaintiff accountable to Defendants.

---

**1.** At one point in their brief, Defendants argue that they "stand in the shoes" of the customers, but this argument is unfounded. (Def.'s Mem.

Opp'n Prelim.Inj. at 26); *see* 16 Couch, *Cyclopedia of Insurance* § 61:8 (2d rev. ed. 1983).

Defendants issued various life insurance policies to Goodman which named various trusts as the beneficiaries. Upon Goodman's death, Defendants paid the proceeds of the insurance to the trusts. The requirements of the trusts resulted in the money being paid to Goodman's customers. Defendants seek to hold SLK liable for the misdeeds of its customer. Whether Defendants claims have merit is not for me to determine. The matter before me involves solely the arbitrability of Defendants' claims.

In order for Defendants to compel Plaintiffs to submit to arbitration, they must show that the relationship between the parties is of the nature specified in the NYSE Constitution and the Rules. *See Paine, Webber, Jackson & Curtis, Inc. v. The Chase Manhattan Bank, N.A.,* 728 F.2d 577, 580 (2d Cir.1984) (hereinafter referred to as *"Paine, Webber"*). The NYSE Constitution, art. XI, ¶ 1501, § 1 provides, in pertinent part:

> ... any controversy between a member ... and any other person arising out of the business of such member ... shall at the insistence of any such party be submitted for arbitration in accordance with the provisions of this Constitution and such rules as the Board may from time to time adopt.

*Id.*

The Rules state substantially the same provision:

> (a) Any dispute, claim or controversy between a non-member and a member ... arising in connection with the business of such member ... shall be arbitrated under the Constitution and Rules of the New York Stock Exchange, Inc. as provided by any duly executed and enforceable written agreement or upon the demand of the non-member.

*Id.*

The question becomes whether the dispute between Plaintiff and Defendant "arises out of" the business of Plaintiff. This is a case of first impression and one that was expressly left open by the Court of Appeals in *Paine, Webber.* 728 F.2d at 580 n. 5. If the claims arise out of the business of Plaintiff, then the matter must be arbitrated. However, if it is determined that the claims do not arise out of Plaintiff's business, Plaintiff cannot be forced to submit to arbitration. Defendants base their claims on the fact that financial statements generated originally by Plaintiff were apparently supplied to them by Goodman. There is a question as to when the documents were altered. Defendants assert that the documents were prepared falsely by Plaintiff. Plaintiff states that it provided Goodman with accurate account statements, and that it learned subsequently that the documents were altered and sent to Defendants.

Defendants mischaracterize the role of the NYSE Arbitration system. They cite to the presumption in favor of arbitration, and argue that the court should defer to the presumption. (Def.'s Mem.Opp'n Prelim.Inj. at 9); *see Pearce v. E.F. Hutton Group, Inc.,* 828 F.2d 826, 829 (D.C.Cir.1989). Defendants' reliance is misplaced. In *Pearce,* the Court applied the presumption due to the existence of an arbitration agreement between the parties. *Id.* The statement emphasized by Defendants that the NYSE is an example of an industry that effectively utilizes an arbitration system is accurate, but nonetheless is inapplicable to this situation. The *Pearce* court also noted that "arbitration is a creature of contract." *Id.* (citing *Dean Witter Reynolds, Inc. v. Byrd,* 470 U.S. 213, 218, 105 S.Ct. 1238, 1241, 84 L.Ed.2d 158 (1984)). Given the absence of a contract between the parties, there is no presumption of arbitrability.

In determining the arbitrability of the claims, I look not to the merits of each party's case, but to the nature of the dispute and the people involved. The absence of any agreement whatsoever is fatal to Defendants' case. There is no indication that Plaintiff intended that the NYSE Constitution and Rules be applicable with regard to Defendants. This is because Plaintiff never transacted any business with any of the defendants. In fact, there is no indication that Plaintiff even knew that Goodman had obtained life insurance, much less be subject to arbitration of a dispute resulting therefrom. To rule otherwise would lead to the absurd: "[A]ny rule extending the arbitration provisions to controversies not arising out of ex-

change-related business would do significant injustice to the reasonable expectations of exchange members. Such a rule would require every exchange member, at the insistence of the nonmember, to submit to exchange arbitration every dispute it has with any entity in the world, no matter what the subject matter." *Paine, Webber*, 728 F.2d at 581.

The arbitration provision contained in the NYSE Constitution and Rules which provides for arbitration between members and nonmembers has largely been applied in purchase and sale of securities. *See Paine, Webber*, 728 F.2d at 579, 580. In these cases, the NYSE Rules on Arbitration were incorporated by reference and made part of the agreements. *Id.* at 580. Here there is no agreement, no sale, and therefore no contractual obligation to arbitrate.

Plaintiff is bound to abide by the NYSE Constitution and Rules. However, it is not bound to Defendants in any way. The fact that Goodman supplied Defendants with incomplete or inaccurate financial statements does not rise to the level necessary to involve the creator of the original documents. In all its papers, Defendants do not once refer to the existence of any transaction or business with Plaintiff. I cannot find any relationship between the NYSE member and the nonmember, except that the nonmember was the insurance carrier of a customer of the member. There is no authority establishing the point at which a sufficient nexus is reached between the parties to warrant NYSE arbitration, but wherever that point may be, this situation is far from it. Accordingly, Plaintiff's motion for a preliminary injunction enjoining Defendants from compelling them to submit to arbitration is granted.

SO ORDERED.