**MOUNT ARARAT CEMETERY,**
**Plaintiff,**

v.

**CEMETERY WORKERS AND GREENS**
**ATTENDANTS UNION, LOCAL 365,**
**S.E.I.U., A.F.L.-C.I.O., Defendant.**

**No. 97 CV 3518 (TCP).**

United States District Court,
E.D. New York.

Aug. 7, 1997.

**446**

Richard M. Betheil, Pryor, Cashman, Sherman & Flynn, New York City, Jerold Rotbard, Harold, Salant, Strassfield & Spielberg, White Plains, NY, for Plaintiff.

## ORDER

PLATT, District Judge.

By Notice of Motion filed 23 June 1997 plaintiff MOUNT ARARAT CEMETERY ("Ararat") moves for a preliminary injunction, pursuant to Federal Rule of Civil Procedure 65(a), to stay an arbitration proceeding commenced by defendant CEMETERY WORKERS AND GREENS ATTENDANTS UNION, LOCAL 365, S.E.I.U., A.F.L.-C.I.O. ("Local 365") and to enjoin Local 365 from proceeding with its demand for arbitration.

## BACKGROUND

As a member of the Cemetery Employer Association of Greater New York ("CEA"), Ararat is subject to a collective bargaining agreement with Local 365. The last integrated contract between Ararat and Local 365 was effected in 1971 and was extended every year through 31 December 1996. Both parties agree that, pursuant to the contract's "disinterment" and "seniority" provisions, (*see* Agreement Between Local 365 and Ararat ¶¶ 11, 28), Ararat was obliged to delegate premium pay "disinterment" assignments to crews of two workers each on a rotating seniority basis.

As required by the National Labor Relations Act, CEA gave Local 365 notice on 28 October 1996 that the contract would soon expire. On 20 December 1996 CEA gave the required notice to mediation agencies that Local 365 and Ararat had not reached a new agreement. On 1 January 1997 Local 365 declined to renegotiate the contract.

On 14 May 1997—five months after the contract expired—Local 365 filed a Demand for Arbitration after Ararat assigned the same workers to perform three separate disinterments rather than distributing those opportunities among three separate crews on a rotating seniority basis. Though the parties commenced arbitrating on 30 May 1997, Ararat filed an Order to Show Cause seeking to enjoin the arbitration. Ararat agreed to withdraw that motion on 23 June 1997 in exchange for Local 365's consent to a Temporary Restraining Order suspending the arbitration. Ararat then filed the instant motion for a preliminary injunction.

## DISCUSSION

To obtain the injunction it seeks, Ararat must establish both irreparable harm and likelihood of success on the merits of its case. *Reuters Ltd. v. United Press Int'l, Inc.*, 903 F.2d 904, 907 (2d Cir.1990).

 Though the existence of an arbitration clause raises a "presumption of arbitrability," *Truck Drivers Local Union No. 807, I.B.T. v. Regional Import & Export Trucking Co., Inc.*, 944 F.2d 1037, 1042 (2d Cir. 1991), that presumption may not extend arbitrability beyond the scope of the contractual provision that provides for it. *Spear, Leeds & Kellogg v. Central Life Assurance Co.*, 85 F.3d 21, 28 (2d Cir.1996). "Arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed to submit." *United Steelworkers v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582, 80 S.Ct. 1347, 1353, 4 L.Ed.2d 1409 (1960). Thus, as to the irrepa-

rable harm element of the preliminary injunction inquiry, Ararat may be presumed to suffer irreparable harm if forced to arbitrate a dispute it did not intend to be subject to arbitration after its contract expired. *See Spear, Leeds & Kellogg v. Central Life Assurance Co.,* 879 F.Supp. 403, 404 (S.D.N.Y. 1995), *rev'd on other grounds,* 85 F.3d 21 (2d Cir.1996) (holding that compelling arbitration of matter not properly subject to arbitration constitutes "per se irreparable harm"). Likelihood of success on the merits—i.e., whether the dispute is actually arbitrable—therefore governs whether the Court may grant the injunction Ararat seeks.

■ As a general rule, absent express language to the contrary, grievances that arise under the contract but based on events that occur after the contract's termination are subject to arbitration. *Nolde Bros., Inc. v. Local 358, Bakery & Confectionary Workers Union,* 430 U.S. 243, 253–55, 97 S.Ct. 1067, 1073–74, 51 L.Ed.2d 300 (1977). However, post-expiration grievances may be said to "arise under" the contract only where they "involve[d] facts and occurrences that arose before expiration, where an action taken after expiration infringes a right that accrued or vested under the agreement, or where, under normal principles of contract interpretation, the disputed contractual right survives expiration of the remainder of the agreement." *Litton Fin. Printing Div. v. N.L.R.B.,* 501 U.S. 190, 205–206, 111 S.Ct. 2215, 2225, 115 L.Ed.2d 177 (1991).

The dispute at issue here concerns the method of assignment and payment due to bargaining unit employees for duties performed on 14 May 1996—five months after the agreement between Local 365 and Ararat expired. As to the first possible basis for arbitrability under *Litton,* Local 365's grievance simply may not be said to involve facts and occurrences that arose before contract expiration.

■ As to the second possible basis, grievances may not be deemed to "arise under" the contract merely by virtue of the fact that the contract would have applied to grievance at issue had it not expired. *Litton,* 501 U.S. at 206, 111 S.Ct. at 2225. Unless governed by national labor laws, contractual obligations typically expire upon expiration of the contract. *Id.* at 207, 111 S.Ct. at 2225–26. Though contractual rights that have vested or accrued may be subject to post-expiration arbitration, the Court in *Litton* held that contractual layoff provisions that turned on changeable factors such as aptitude and ability as well as on seniority did not create a vested or accrued right. *Id.* at 210, 111 S.Ct. at 2227. The Court did not rule on whether a pure seniority interest should be deemed a vested right. *Id.* at 209–210, 111 S.Ct. at 2226–27.

Despite the Court's reservation of that question in *Litton,* the law could not be more clear in the Second Circuit. After much deliberation, the Second Circuit, sitting *en banc* in *Local 1251 Int'l Union v. Robertshaw Controls Co.,* 405 F.2d 29 (2d Cir.1968), overruled a previous decision and held that seniority is not a vested or accrued right. The court determined that "the basic proposition of the [overruled] opinion that seniority is a vested right, finds no support in authority, in logic or in the socio-economic setting of labor-management relations. Seniority is wholly a creation of the collective agreement and does not exist apart from that agreement." *Local 1251,* 405 F.2d at 33. The court concluded that its previous decision to the contrary "seriously misconceived the nature of the employment relationship." *Id.*

Local 365 cites *Chicago Pneumatic Tool Co. v. Smith,* 890 F.Supp. 100 (N.D.N.Y. 1995), in support of the arbitrability of the job assignment dispute at issue. However, in that case, the court held the dispute concerning pension benefits to be arbitrable because such benefits, "which can be worked towards or accumulated over time" and which are considered a "form of deferred compensation," are presumptively vested absent evidence to the contrary. *Chicago Pneumatic,* 890 F.Supp. at 121. This Court need not pass upon the validity of that conclusion; the Second Circuit has determined conclusively that seniority rights of the type at issue here presumptively are not vested. *Local 1251,* 405 F.2d at 33. In light of that holding, Local 365's assertion that its grievance concerns vested rights and is therefor arbitrable is unpersuasive.

A more detailed examination of the "rotating seniority rights" at issue further undermines Local 365's contention. In the assignment of disinterments, Ararat used seniority simply as a means of cycling through all eligible employees to determine who should be given particular work assignments. Ararat in effect used seniority as a numbering system in order to ensure the equitable distribution of "plum" disinterment assignments, which garnered a "double time" rate of pay. (Agreement Between Local 365 and Ararat ¶ 28.) Local 365 member's "right" to the jobs at issue turned not on seniority *per se*, but on when they had last been granted such a job and, thus, their position in the job distribution cycle—a matter of timing only nominally related to their seniority. *Cf. Litton*, 501 U.S. at 210, 111 S.Ct. at 2227 (concluding that the seniority-based layoffs at issue could not be considered vested in part because the "importance of any particular skill in this equation varies with the requirements of the employer's business at any given time"). Even were seniority considered a vested right in the abstract—which as the foregoing makes clear it is not in the Second Circuit—it was not a "right" at all as used by Ararat to assign disinterments.

■ Turning finally to the third possible basis for arbitrability under *Litton*, the contractual right at issue may not be deemed to survive expiration of the remainder of the agreement under normal principles of contract interpretation. Local 365 is correct in its assertion that a court may consider extrinsic evidence to explain ambiguous or uncertain meanings of contract terms. *Pouch Terminal Inc. v. Hapag–Lloyd, Inc.*, 172 A.D.2d 735, 569 N.Y.S.2d 122 (2d Dep't 1991). However, there is no ambiguity in the contract's language as to whether disputes concerning disinterment assignments are properly subject to arbitration; under the contract they clearly are, after its expiration they clearly are not.

■ The arbitration provisions of the agreement between Local 365 and Ararat contain no language to indicate that the parties intended those provisions to continue in effect beyond the contract's expiration date. The parties could not agree to an extension of those or any other contract provisions after the contract expired. The Supreme Court in *Litton* specifically noted that post-expiration disputes as to contract-based benefits should be subject to arbitration only when the "collective-bargaining agreement provides in explicit terms that [those] benefits continue after the agreement's expiration." *Litton*, 501 U.S. at 207–208, 111 S.Ct. at 2226. There is a notable absence of any such explicit terms in the agreement at issue here.

### CONCLUSION

For all of the foregoing reasons, Ararat's motion for a preliminary injunction must be, and the same hereby is, GRANTED.

SO ORDERED.