**NEW YORK NEWS INC.,**
**Plaintiff–Appellee,**

v.

**NEWSPAPER GUILD OF NEW YORK; Barry F. Lipton, individually and as President of Newspaper Guild of New York, Defendants–Appellants.**

**No. 955, Docket 90–7891.**

United States Court of Appeals,
Second Circuit.

Argued Jan. 16, 1991.
Decided March 4, 1991.

Irwin Bluestein, New York City (Stuart E. Bauchner, Vladeck, Waldmen, Elias & Engelhard, P.C., of counsel), for defendants-appellants.

Douglas R. Pierce, Nashville, Tenn. (R. Eddie Wayland, Charles J. Mataya, King & Ballow, Nashville, Tenn., Gregory I. Rasin, Jackson, Lewis, Schnitzler & Krupman, New York City, of counsel), for plaintiff-appellee.

Before OAKES, Chief Judge, CARDAMONE and WALKER, Circuit Judges.

PER CURIAM:

On March 31, 1987, plaintiff-appellee New York News, Inc. (the "News") and defendant-appellant Newspaper Guild of New York (the "Guild") entered into their most recent collective-bargaining agreement (the "Agreement"). Early in 1990, a dispute arose between the parties as to whether the Agreement had been terminated pursuant to the Agreement's termination provision. On February 15, 1990, the Guild submitted this dispute to arbitration, seeking an order directing the News to continue to comply with the Agreement "until such time as [the Agreement] may be properly terminated in accordance with its terms."

On March 7, 1990, the News filed this action in the District Court for the Southern District of New York, John M. Cannella, *Judge*, seeking to enjoin the Guild from proceeding with its demand for arbitration and seeking a declaration that termination of the Agreement was not subject to arbitration. The News also sought a declaration that the Agreement had been terminated. The district court granted the News' motion for summary judgment. Substantially for the reasons stated by the district court and as set forth below, we affirm.

1. *Arbitrability.*

We first address whether the district court correctly determined that the parties' contract termination dispute was not subject to arbitration under the Agreement.

Article 22 of the Agreement (entitled "GRIEVANCE PROCEDURE") sets forth the procedure to be followed "in adjusting disputes arising out of th[e] Agreement or affecting the relations of employees covered by th[e] Agreement and the [News]." Whenever practicable, a grievance is heard first by the shop steward and designated department head. If no resolution is reached, the grievance is submitted to the Shop Adjustment Committee, composed of three to five members of the Guild. The Shop Adjustment Committee then attempts to adjust the grievance amicably through discussions with the News.

Under Article 22, section 3 (entitled "Arbitration"), impasse at the Shop Adjustment Committee level may lead to arbitration of the dispute by the Grievance Committee, a permanent body consisting of two representatives of the Guild and two representatives of the News. The Grievance Committee may address "only disputes arising from the interpretation or enforcement of th[e] [A]greement which have failed to be adjusted by the Shop Adjustment Committee." Decisions of the Grievance Committee are final and of binding effect.[1]

We agree with the district court that Article 22, section 3, is a "narrow" arbitration clause, covering only specific types of disputes. *See McDonnell Douglas Fin. Corp. v. Pennsylvania Power & Light Co.*, 858 F.2d 825, 832 (2d Cir.1988) (comparing "broad" and "narrow" arbitration clauses). Under this provision, disputes must involve employee or employer grievances that arise from the interpretation or enforcement of the Agreement. In addition, disputes can reach arbitration only after they have passed through the Shop Adjustment Committee without being adjusted.

Faced with a narrow arbitration clause, "a court considering the appropriate range

---

1. Article 22, section 3, provides further that, should the Grievance Committee fail to reach a decision, either party may require that the dispute be submitted to an arbitrator obtained through the procedures of the American Arbitration Association.

of arbitrable issues must 'consider whether the [question at] issue is on its face within the purview of the clause.'" *Id.* (quoting *Rochdale Village, Inc. v. Public Serv. Employees Union*, 605 F.2d 1290, 1295 (2d Cir.1979)). Applying this test, the district court properly concluded that disputes over contract termination are not covered by Article 22, section 3. While the present dispute arguably arises from the interpretation of the Agreement, *see Rochdale Village*, 605 F.2d at 1295–96; *Local Union No. 4, Int'l Bhd. of Elec. Workers v. Radio Thirteen–Eighty, Inc.*, 469 F.2d 610, 614 (8th Cir.1972), it cannot be characterized as a "grievance" within the traditional meaning of that term, *see Rochdale Village*, 605 F.2d at 1295 (collecting cases); *National R.R. Passenger Corp. v. Boston & Maine Corp.*, 850 F.2d 756, 762 (D.C.Cir.1988); *Purex Corp. v. Automotive, Petroleum & Allied Indus. Employees Union*, 705 F.2d 274, 277 (8th Cir.1983).[2] The dispute is therefore not within the purview of Article 22, section 3, and is not subject to arbitration. We note parenthetically that the present dispute has not travelled the requisite procedural route to arbitration—i.e., it has not "failed to be adjusted by the Shop Adjustment Committee."

In determining that the parties' present dispute is not arbitrable under the Agreement, we are mindful of the strong federal policy favoring settlement of labor disputes through arbitration. *See AT & T Technologies, Inc. v. Communications Workers of America*, 475 U.S. 643, 650, 106 S.Ct. 1415, 1419, 89 L.Ed.2d 648 (1986); *United Steelworkers of America v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582–83, 80 S.Ct. 1347, 1352–53, 4 L.Ed.2d 1409 (1960); *McDonnell Douglas*, 858 F.2d at 831. However, it is clear that this policy cannot deprive the News of the benefit of its bargain to limit the circumstances under which it must submit to arbitration. *See AT & T Technologies*, 475 U.S. at 648, 106 S.Ct. at 1418 (" '[A]rbitration is a matter of contract and a party cannot be required to

submit to arbitration any dispute which he has not agreed so to submit.'") (quoting *Warrior & Gulf*, 363 U.S. at 582, 80 S.Ct. at 1353); *McDonnell Douglas*, 858 F.2d at 831–32.

## 2. *Termination of the Agreement.*

■ Having determined that it had jurisdiction to resolve the parties' contract termination dispute, the district court went on to resolve that dispute in favor of the News. Specifically, the court declared that the News properly terminated the Agreement pursuant to its terms. We agree.

Article 25(a) of the Agreement provides:

This Agreement with all its terms and provisions shall be in effect from March 31, 1987 to March 30, 1990, and thereafter until renewed, modified, extended or terminated as hereinafter provided. Negotiations for renewal, modification or extension of this Agreement *may* be instituted by either party not earlier than 75 days prior to its expiration. In the event such negotiations have not resulted in the renewal, modification or extension of this Agreement prior to its expiration, status quo conditions shall continue thereafter until either party gives the other written notice terminating such conditions.

(Emphasis added). Citing Article 25(a)'s nonmandatory language (italicized above), the district court rejected the Guild's position that the News had a contractual obligation to negotiate in good faith for a successor collective bargaining agreement before exercising its right to terminate the Agreement. Instead, the court correctly found that each of the parties had an unqualified right to terminate the Agreement after its expiration by providing written notice. We believe that Article 25(a) is not susceptible of competing interpretations. *See AT & T Technologies*, 475 U.S. at 650, 106 S.Ct. at 1419; *Warrior & Gulf*, 363 U.S. at 582–83, 80 S.Ct. at 1352–53. There-

---

**2.** While these cases hold that arbitration clauses covering only "employee grievances" do not apply to contract termination disputes, we believe that their holdings are equally applicable where, as here, the clause at issue covers both employee and employer grievances. In either case, the critical inquiry is whether the clause covers only "grievances."

fore, because it is undisputed that the News sent the Guild written notice of termination after expiration of the Agreement,[3] the Agreement was terminated pursuant to its terms, and the district court did not err in granting the News a declaration to this effect.

Accordingly, the district court's judgment is affirmed.

**3.** In a letter dated April 4, 1990, the director of labor relations at the News provided the president of the Guild with "formal notice" that the News:

hereby exercises its right to terminate the parties' collective bargaining agreement that expired March 30, 1990. The effective date of termination is April 5, 1990.