**Leo HAVILAND, Plaintiff–Appellee,**

v.

**GOLDMAN, SACHS & CO., Defendant,**

**J. Aron & Company, Defendant–Appellant.**

**No. 285, Docket 90–7460.**

United States Court of Appeals, Second Circuit.

Argued Oct. 11, 1990.

Decided Oct. 16, 1991.

Gandolfo V. DiBlasi, New York City (Theodore O. Rogers, Jr., Thomas J. Witt, Sullivan & Cromwell, of counsel), for defendant-appellant.

Judd Burstein, New York City (Jay Goldberg, P.C., of counsel), for plaintiff-appellee.

Before MAHONEY and WALKER, Circuit Judges, and McKENNA,* District Judge.

MAHONEY, Circuit Judge:

Plaintiff-appellee Leo Haviland commenced this action in the United States District Court for the Southern District of New York, Leonard B. Sand, *Judge*, against his former employer, defendant Goldman, Sachs & Co. ("Goldman"), and its affiliate, defendant-appellant J. Aron & Company ("Aron"), alleging injury caused by a pattern of racketeering activity and common law fraud.

Defendants countered with a motion, pursuant to Section 3 of the Arbitration Act (title 9 of the United States Code), 9 U.S.C. § 3 (1988), to stay all proceedings pending arbitration before the New York Stock Exchange (the "Exchange"). They based their motion upon an application for securities industry registration executed by Haviland on September 28, 1981 in which he agreed to arbitrate certain disputes under the "rules, constitutions, or by-laws" of, *inter alia*, the Exchange, and upon Exchange Rules 347 and 600.

In an opinion and order entered May 8, 1990, the district court granted the motion to stay the claims asserted against Goldman, but denied the motion to stay the identical claims asserted against Aron. The court granted the motion as to Goldman pursuant to Exchange Rule 347, which governs the arbitrability of disputes between Exchange registered representatives and Exchange members arising out of a registered representative's employment or termination of employment. *See Haviland v. Goldman, Sachs & Co.*, 736 F.Supp. 507, 509–10. The court denied the motion as to Aron pursuant to Exchange Rule 600(a), which governs the arbitrability of disputes between persons associated with Exchange members and nonmembers. *See id.* at 510–11.

On appeal, Aron contends that the district court misconstrued the law of this circuit to require that disputes falling within Rule 600(a) arise out of exchange-related activity. According to Aron, our case law establishes that where employment claims by an associated person must be arbitrated under Rule 347, the same claims against the member firm's affiliate must be arbitrated under Rule 600(a).

We affirm the order of the district court.

## Background

Leo Haviland was employed by Goldman on May 22, 1979, and remained an employee until Goldman terminated his employment on January 31, 1989. Goldman is an investment banking firm, a registered broker-dealer, and a member organization of numerous securities exchanges, including the Exchange.

Haviland became head of Goldman's Energy Futures and Options Group in 1982, and a Goldman vice president in 1984. Thereafter until the termination of his employment, Haviland was a vice president in charge of energy futures. In that role, Haviland traded energy futures (contracts to buy or sell a quantity of a form of energy), and options on energy futures on behalf of refining and marketing firms, trading companies, and energy producers. Haviland never executed this trading on the Exchange, but rather on various commodities exchanges, including the International Petroleum Exchange in London.

In 1984, the Goldman partners entered the energy market as principals through their proprietary investment vehicle, Aron. Aron, a partnership, is an affiliate of Goldman with the same ownership (i.e., the general partners of Aron and Goldman are identical). Through Aron, the Goldman partners invest their own capital in various commodities and foreign exchange.

Haviland's claims are based upon Aron's entry into the energy market. Haviland asserts that upon that entry, the confidential information he acquired regarding the trading, purchase, and sale plans of his clients became of great value to Aron. Ac-

* The Honorable Lawrence M. McKenna, United States District Judge for the Southern District of New York, sitting by designation.

cording to Haviland, in response to the concern he expressed regarding the continued confidentiality of this information, defendants falsely assured him, from April 1984 to the spring of 1987, that it would be zealously safeguarded against disclosure, particularly to Aron. Haviland alleges that these representations defrauded him into continuing in the employ of Goldman, and that various innocent repetitions of these representations by Haviland, as well as representations made directly by Goldman to clients, amounted to mail fraud in violation of 18 U.S.C. § 1341 (1988), wire fraud in violation of 18 U.S.C. § 1343 (1988), and common law fraud.

Haviland further alleges that from July 1987 through January 1989, defendants attempted to extort him into divulging confidential client information in violation of 18 U.S.C. § 1951 (1988). Haviland claims that because he refused to divulge this information, he was denied appropriate salary increases and eventually summarily dismissed. Premised upon these allegations, Haviland brought identical claims against Goldman and Aron for violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962(c) and (d) (1988), and common law fraud.

Haviland filed his complaint on December 20, 1989. Defendants moved on January 25, 1990, pursuant to 9 U.S.C. § 3 (1988), for an order staying all proceedings pending the outcome of arbitration. The defendants based their motion upon Haviland's execution, on September 28, 1981, of a "Uniform Application for Securities Industry Registration," known as a Form U–4. The signature page of the Form U–4 contains the following provision:

> I agree to arbitrate any dispute, claim or controversy that may arise between me and my firm, or a customer, or any other person, that is required to be arbitrated under the rules, constitutions, or by-laws of the organizations with which I register, as indicated in Question 8.

In response to question 8 of the U–4, Haviland applied for registration with the Exchange, the American Stock Exchange and the National Association of Securities Dealers, and became a registered representative of Goldman for the Exchange on October 23, 1981. He continued in this position throughout his employment at Goldman. The quoted agreement in Haviland's U–4 application thus incorporates by reference the arbitration provisions of the Exchange's rules, constitution, and by-laws.

As an Exchange member, Goldman invoked Exchange Rule 347, which is entitled "Controversies As to Employment or Termination of Employment," and provides:

> Any controversy *between a registered representative and any member or member organization arising out of the employment or termination of employment* of such registered representative by and with such member or member organization shall be settled by arbitration, at the instance of any such party, in accordance with the arbitration procedure prescribed elsewhere in these rules.

N.Y.S.E. Rule 347 (revised to Feb. 1, 1990) (emphasis added).

Aron, a non-member, relied upon Exchange Rule 600(a), which is entitled "Arbitration," and states:

> Any dispute, claim or controversy *between a* customer or *non-member and a* member, allied member, member organization and/or *associated person arising in connection with the business of such* member, allied member, member organization and/or *associated person in connection with his activities as an associated person* shall be arbitrated under the Constitution and Rules of the [Exchange] as provided by any duly executed and enforceable written agreement or *upon the demand of the* customer or *non-member.*

N.Y.S.E. Rule 600(a) (revised to Feb. 1, 1990) (emphasis added).

It is undisputed that Haviland is a "registered representative" within the meaning of Rule 347, an "associated person" within the meaning of Rule 600(a), that Goldman is a "member" or "member organization" within the meaning of both rules, and that Aron is a "non-member" within the mean-

ing of Rule 600(a). *See Haviland*, 736 F.Supp. at 508.

The district court ruled that Haviland's dispute with Goldman fell within the terms of Rule 347, concluding that his claims against Goldman arose out of his employment or termination of employment. *See id.* at 509–10. Applying the broad interpretation of Rule 347 that we adopted in *Fleck v. E.F. Hutton Group, Inc.*, 891 F.2d 1047 (2d Cir.1989), the court determined that because Haviland's dispute " ' "involve[s] significant aspects of the employment relationship," ' " the dispute is subject to compulsory arbitration. *Haviland*, 736 F.Supp. at 509 (quoting *Fleck*, 891 F.2d at 1053 (quoting *Morgan v. Smith, Barney, Harris, Upham & Co.*, 729 F.2d 1163, 1167 (8th Cir.1984))).

The district court denied Aron's arbitration claim, on the other hand, relying upon our ruling in *Paine, Webber, Jackson & Curtis, Inc. v. Chase Manhattan Bank, N.A.*, 728 F.2d 577 (2d Cir.1984), that the scope of Rule 600(a) " 'should be limited, at least in cases ... in which the alleged improper conduct is on the part of the nonmember, to controversies arising out of the member's exchange-related business.' " *Haviland*, 736 F.Supp. at 510 (quoting *Paine*, 728 F.2d at 580). The court concluded that Haviland's claims against Aron do not arise out of exchange-related business and hence are not subject to compulsory arbitration. *Id.* at 510–11. In reaching that result, the court rejected Aron's contention that our decision in *Fleck*, 891 F.2d at 1054, established that the scope of Rule 600(a) is identical to that of Rule 347. *Id.* The court noted the prior representation of Haviland's counsel that Haviland would discontinue his claims against Goldman in the event of a ruling (as subsequently occurred) that those claims were arbitrable, but the claims against Aron were not. *Id.* at 511.

This appeal followed.

### Discussion

We have jurisdiction over this timely appeal pursuant to Section 16(a)(1)(A) of the Arbitration Act, 9 U.S.C. § 16(a)(1)(A) (1988), which provides for appellate review "of an order refusing a stay of any action under section 3 of this title." We review *de novo* the denial of a motion to stay an action pending arbitration. *See McDonnell Douglas Finance Corp. v. Pennsylvania Power & Light Co.*, 858 F.2d 825, 831 (2d Cir.1988); *Genesco, Inc. v. T. Kakiuchi & Co., Ltd.*, 815 F.2d 840, 846 (2d Cir.1987).

We emphasize, at the outset, that " 'arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit.' " *AT & T Technologies, Inc. v. Communications Workers of Am.*, 475 U.S. 643, 648, 106 S.Ct. 1415, 1418, 89 L.Ed.2d 648 (1986) (quoting *United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582, 80 S.Ct. 1347, 1353, 4 L.Ed.2d 1409 (1960)); *see also New York News Inc. v. Newspaper Guild*, 927 F.2d 82, 84 (2d Cir.1991). Accordingly, we may conclude that Haviland undertook the obligation to arbitrate his dispute with Aron only if we find that the dispute lies within the scope of the U–4 agreement that he signed and the Exchange arbitration provisions which it incorporates by reference. *See Merrill, Lynch, Pierce, Fenner & Smith, Inc. v. Georgiadis*, 903 F.2d 109, 112 (2d Cir.1990) ("Applying general principles of contract law, we begin our analysis with the customer agreement signed by Georgiadis."); *S.A. Mineracao da Trindade–Samitri v. Utah Int'l, Inc.*, 745 F.2d 190, 193 (2d Cir.1984) ("The scope of an arbitration clause, like any contract provision, is a question of the intent of the parties.").

In conducting this analysis, however, " 'any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration.' " *Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.*, 473 U.S. 614, 626, 105 S.Ct. 3346, 3353, 87 L.Ed.2d 444 (1985) (quoting *Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25, 103 S.Ct. 927, 941–42, 74 L.Ed.2d 765 (1983)). This axiom flows from the " 'federal policy favoring arbitration,' " *Shearson/American Express, Inc. v. McMahon*, 482 U.S. 220, 226, 107 S.Ct.

2332, 2337, 96 L.Ed.2d 185 (1987) (quoting *Moses H. Cone*, 460 U.S. at 24, 103 S.Ct. at 941), established by the Arbitration Act. *See id.* 482 U.S. at 225–26, 107 S.Ct. at 2336–37.

By way of synthesis, we note that the purpose of the Arbitration Act is " 'to make arbitration agreements as enforceable as other contracts, but not more so.' " *Volt Information Sciences, Inc. v. Board of Trustees of Leland Stanford Junior Univ.*, 489 U.S. 468, 478, 109 S.Ct. 1248, 1255, 103 L.Ed.2d 488 (1989) (quoting *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 404 n. 12, 87 S.Ct. 1801, 1806 n. 12, 18 L.Ed.2d 1270 (1967)). We have repeatedly observed, therefore, that " 'federal policy alone cannot be enough to extend the application of an arbitration clause far beyond its intended scope.' " *McDonnell Douglas*, 858 F.2d at 831 (quoting *Fuller v. Guthrie*, 565 F.2d 259, 261 (2d Cir.1977)); *see also New York News*, 927 F.2d at 84 (federal policy favoring arbitration cannot deprive party of benefit of its bargain to limit circumstances under which it must arbitrate).

With these principles in mind, we address the contentions presented on this appeal. The crux of Aron's position is that the district court misconstrued the law of this circuit to require that disputes falling within Rule 600(a) arise from an associated person's exchange-related activity (at least when the alleged improper conduct is attributed to the nonmember party to the dispute), and that in doing so the court construed *Paine* too expansively and *Fleck* too restrictively. According to Aron, *Fleck* establishes that in employment-related cases, Rule 347 and Rule 600(a) are coextensive. Thus, Aron insists that *Fleck*, not *Paine*, governs the arbitrability of its dispute with Haviland and mandates arbitration of that dispute, just as Rule 347 mandates arbitration of the dispute between Haviland and Goldman. We disagree.

In *Paine*, plaintiff, an Exchange member, brought suit against a nonmember bank and a former employee of the bank alleging that they fraudulently misled plaintiff into extending credit to a third party, resulting in a $1.5 million loss. 728 F.2d at 578–79. The defendants moved to compel arbitration pursuant to the constitution and rules of the Exchange. *Id.* at 579. We affirmed the district court's denial of that motion, holding that:

> The arbitration provisions found in the Exchange Constitution and Rules governing member-non-member controversies should be limited, at least in cases such as the instant one in which the alleged improper conduct is on the part of the non-member, to controversies arising out of the member's exchange-related business.

*Id.* at 580.

■ This construction of Rule 600(a), in our view, faithfully reflects the reasonable expectations of those who commit themselves to be bound by it. As we observed in *Paine:*

> [A]ny rule extending the arbitration provisions to controversies not arising out of exchange-related business would do significant injustice to the reasonable expectations of exchange members. Such a rule would require every exchange member, at the insistence of a non-member, to submit to exchange arbitration every dispute it has with any entity in the world, no matter what the subject matter.

*Id.* We note in this regard that in the absence of an "enforceable written agreement" calling for arbitration, Rule 600(a) authorizes only the nonmember, and not the Exchange insider (member, allied member, member organization, or associated person), to demand arbitration. It seems inconsistent with the reasonable intention of the Exchange insider to extend this unilateral advantage to the nonmember outside the field of exchange-related activities.

■ We note also that the language of Rule 600(a) dictates a somewhat narrower construction of the duty assumed by an associated person relative to that assumed by an Exchange member. Rule 600(a) defines a member's duty to arbitrate to extend to those disputes with nonmembers "arising in connection with the business of such member"; it defines an associated person's duty to extend only to those dis-

putes with nonmembers "arising in connection with the business of such ... associated person in connection with his activities as an associated person." This indicates that the associated person's "activities" are narrower than his "business," thus requiring a more restrictive construction of the duty assumed. Accordingly, we conclude that the exchange-relatedness requirement that we held in *Paine* to condition a member's duty to arbitrate applies *a fortiori* to the duty assumed by an associated person.[1]

In so ruling, we reject Aron's contention that *Fleck*, rather than *Paine*, governs the disposition of this case. In *Fleck*, plaintiff, an Exchange registered representative, sued both his former employer E.F. Hutton & Co., Inc. (the "Company"), an Exchange member organization, and the former employer's affiliate, E.F. Hutton Group (the "Group"), a nonmember, asserting identical post-termination defamation claims against each defendant. *Fleck*, 891 F.2d at 1048–50. We ruled that those claims asserted against the Company, a former employer, involving "significant aspects of the employment relationship" were subject to compulsory arbitration under Rule 347, a ruling upon which the district court relied in granting Goldman's arbitration claim under Rule 347. *Id.* at 1050–53.

We also ruled that under Rule 600(a), the claims asserted against the nonmember Group were subject to arbitration. Aron contends that in so ruling, *Fleck* establishes that the scope of Rule 347 and Rule 600(a) are coterminous, pointing to the following language in *Fleck:*

> To be arbitrable, Fleck's claims must have arisen "in connection with [his] business [or] in connection with his activities as an associated person." Rule 600(a). We hold that *the dispute with the Group is arbitrable to the same extent as the dispute with the Company; matters that arose in connection with Fleck's activities as an associated person would also arise in connection with his employment under Rule 347.*

*See Pearce* (allowing defendant, the Hutton Group, to use Rule 600(a) to arbitrate an ex-employee's claim that he was defamed by statements made about his activities as an associated person); *Paine, Webber, Jackson & Curtis, Inc. v. Chase Manhattan Bank, N.A.*, 728 F.2d 577 (2d Cir.1984) (refusing to let defendant, who was not a NYSE member, arbitrate a non-exchange related fraud claim under Rule 600(a)).

891 F.2d at 1054 (emphasis added).

We do not accept Aron's reading of *Fleck*. Rather, we agree with the district court "that rather than stating a general rule about the scope of Rule 600(a), the [language from *Fleck* emphasized in the above quotation] referred only to the facts in that case where the exchange-relatedness of the conduct was not at issue." *Haviland*, 736 F.Supp. at 510; *cf. Coenen v. R.W. Pressprich & Co.*, 453 F.2d 1209, 1212 (2d Cir.1972) (contrasting breadth of Exchange arbitration clause for disputes between members with provision governing disputes between member and nonmember, which must arise out of business of member); N.Y.S.E. Const. art. XI, § 1 (revised to Feb. 1, 1990) (making same distinction).

The statements at issue in *Fleck* referred to Fleck's character and performance as a stockbroker. *See Fleck*, 891 F.2d at 1049. As in *Pearce*, furthermore, although the former employee sued in defamation, the issue of the truth of the defamation turned upon the asserted misconduct of the employee, not the nonmember. *Pearce* explicitly distinguished *Paine* on this basis. *See Pearce*, 828 F.2d at 832; *see also supra* note 1. Finally, it would be more than anomalous to read *Fleck* as overruling the holding of *Paine sub silentio* in a passage in which *Fleck* cites *Paine* with approval.

In its reply brief, and more emphatically at oral argument, Aron contended that even accepting the *Paine* ruling that arbitration may be demanded by a nonmember only as to controversies arising out of ex-

---

1. Consistent with *Paine,* 728 F.2d at 580 & n. 5, we confine our ruling to situations in which the alleged misconduct is attributed to the nonmember. *Cf. Pearce v. E.F. Hutton Group, Inc.,*

828 F.2d 826, 832 (D.C.Cir.1987) (*Paine* limitation inapplicable when associated person assertedly engaged in misconduct).

change-related business, *see Paine*, 728 F.2d at 580, Haviland's dispute with Aron should be subject to arbitration because it has the potential to reflect discredit upon Goldman, Haviland's employer. Aron asserts that the Exchange would have a keen interest in any such tarnishing of the reputation of a member firm such as Goldman, thus satisfying the "exchange-related" requirement. *See Pearce*, 828 F.2d at 830 ("the Exchange expresses each firm's interest that every other member firm conduct its business in a manner that inspires and warrants public confidence in all members").

We regard this argument as misdirected. Our construction of Rule 600(a) in *Paine* was premised upon avoiding "significant injustice to the reasonable expectations of exchange members," *Paine*, 728 F.2d at 580, consistent with the underlying premise that " 'arbitration is a matter of contract.' " *AT & T Technologies*, 475 U.S. at 648, 106 S.Ct. at 1418 (quoting *United Steelworkers*, 363 U.S. at 582, 80 S.Ct. at 1353). We concluded that such members might reasonably anticipate that Rule 600(a) would require them to arbitrate disputes that were related to their exchange activities.

■ The argument advanced by Aron, on the other hand, departs from the focus upon the exchange insider's reasonable expectation in agreeing to be bound by Rule 600(a), and addresses exclusively the Exchange's interest in the reputational aspects of the dispute. We do not accept this separation of the "exchange-related" concept from the context in which it was announced in *Paine*. We note also that in *Pearce*, in which the Exchange's interest in the reputation of its members was stressed, *see* 828 F.2d at 830, asserted misconduct by the complaining associated member was central to the dispute between the parties. *See id.* at 827. As we indicated in *Paine*, the Exchange's interest in the business conduct of its members may warrant a broader reading of Rule 600(a) in this context, *see Paine*, 728 F.2d at 580 & n. 5, but no misconduct by Haviland has been put in issue here.

In addition, we note that associated persons like Haviland contract to arbitrate directly with the Exchange in signing a U–4 registration statement, *see Gilmer v. Interstate/Johnson Lane Corp.*, —— U.S. ——, 111 S.Ct. 1647, 1651 n. 2, 114 L.Ed.2d 26 (1991), and in doing so undertake an open-ended commitment to be bound by the Exchange's rules, constitution, and bylaws. It was thus within the Exchange's power to impose in Rule 600(a) the all-inclusive protection of the Exchange's reputational interests for which Aron contends. In our view, however, it has not done so.

■ The overall theme of Aron's appeal is that because Haviland's real dispute is with Goldman, and that dispute must be arbitrated pursuant to Rule 347, the exactly parallel dispute with Aron should be arbitrated pursuant to Rule 600(a). The two rules, however, are distinct in their terms and purposes. The Goldman partners found it advantageous, furthermore, to deal in various commodities and foreign exchange for their own account through a nonmember affiliate, a choice that was probably compelled by significant commercial and professional considerations, and there is no inherent unfairness in holding them to that election for present purposes. This situation differs materially from one in which the member and non-member defendants simply occupy different levels of an integrated corporate structure, as was the case in *Fleck* and *Pearce*.

Finally, as the district court noted, "[n]o claim is made by Aron that its membership and activities are so closely tied to those of the [Exchange] member Goldman that it can avail itself of the arbitration provisions relating to Goldman." *Haviland*, 736 F.Supp. at 510 n. 2. At a minimum, Aron bore the burden of going forward with such a showing.

### Conclusion

The order of the district court denying Aron's motion for a stay of arbitration is affirmed.

**608**

WALKER, Circuit Judge, dissenting:

Because I believe that NYSE Rule 600(a) and our decisions in *Fleck v. E.F. Hutton Group, Inc.*, 891 F.2d 1047 (2d Cir.1989), and *Paine, Webber, Jackson & Curtis, Inc. v. Chase Manhattan Bank, N.A.*, 728 F.2d 577 (2d Cir.1984), require the arbitration of Haviland's claim against J. Aron, I would reverse the district court's decision.

Haviland, a registered representative of the New York Stock Exchange and a Goldman vice-president in charge of the Energy Futures and Options Group, alleges that Goldman and J. Aron, an entity with ownership identical to Goldman but without NYSE membership, conspired to interfere with Haviland's execution of his responsibilities to Goldman clients. According to Haviland, Goldman misrepresented that confidential information Haviland acquired from clients relating to their energy futures and options trading plans would be screened from J. Aron, which trades as a principal in various markets, including the energy futures and options markets. The complaint also alleges that both J. Aron and Goldman attempted to coerce Haviland to divulge confidential client information, and when he did not comply, Goldman reduced his compensation and then fired him.

The majority does not deny that Haviland's dispute with Goldman is arbitrable under NYSE Rule 347, which governs disputes between members of the NYSE and associated persons including disputes arising out of employment relations, but maintains that Haviland's dispute with J. Aron, virtually identical to his claim against Goldman, is not arbitrable under Rule 600(a). In my view, the majority opinion misreads both Rule 600(a) and our previous decisions construing that rule.

Taken alone, the language of Rule 600(a) plainly covers this dispute. Rule 600(a) makes arbitrable any dispute between a non-member and "a member ... and/or associated person arising in connection with the business of such member ... and/or associated person in connection with his activities as an associated person." The use of the term "associated person" in the NYSE Rules is "clearly meant to draw on the definition found in the Securities Exchange Act of 1934," including a partner, officer, director, or branch manager of an NYSE member. *See Pearce v. E.F. Hutton Group, Inc.*, 828 F.2d 826, 830 (D.C.Cir.1987); 15 U.S.C. § 78c(a)(21); *see also* 15 U.S.C. § 78c(a)(18) (excluding clerical and ministerial employees of broker dealers from definition of associated persons).

As a vice-president of Goldman, a NYSE member, Haviland is an "associated person" under Rule 600(a). Haviland's claims against J. Aron place at issue, among other things, "significant aspects" of his employment as an "associated person," including Haviland's performance of his responsibilities as Goldman's employee and Goldman's decision to reduce Haviland's compensation and ultimately terminate his employment. *Fleck*, 891 F.2d at 1053. Because such issues are inseparable from resolution of Haviland's dispute against J. Aron, Haviland's claims are connected with his activities as an associated person and hence arbitrable under Rule 600(a).

This court so reasoned in *Fleck*, decided in 1989, where we held Rule 600(a) to cover post-termination defamation claims by a former employee of E.F. Hutton, an NYSE member, against E.F. Hutton Group, an E.F. Hutton affiliate which was not a member of the NYSE. Fleck's claims against E.F. Hutton Group were identical to his claims against E.F. Hutton. We reasoned that because resolution of the claims against E.F. Hutton required evaluation of Fleck's performance in his employment as an E.F. Hutton broker, they involved "significant aspects of the employment relationship" and were therefore arbitrable under Rule 347. 891 F.2d at 1053. We then found Fleck's claims against E.F. Hutton Group arbitrable under Rule 600(a) "to the same extent" that Fleck's claims against E.F. Hutton were arbitrable under Rule 347. 891 F.2d at 1054. "[M]atters that arose in connection with Fleck's activities as an associated person would also arise in connection with his employment under Rule 347." *Id.*

*Fleck* did not turn on the fact that Fleck himself worked as a stockbroker, despite the majority's attempt to distinguish it on this basis. Rather, the ruling was motivated by the fact that Fleck's conduct as an "associated person," E.F. Hutton's employee, was squarely at issue. Because E.F. Hutton Group's defense against defamation was that the statements made were true, a decision maker would have to examine Fleck's performance as E.F. Hutton's employee.

In *Pearce*, decided in 1987, the D.C. Circuit took a similar position. The *Pearce* court found that the claims for defamation and invasion of privacy brought by a branch office manager of E.F. Hutton against E.F. Hutton Group were arbitrable under Rule 600(a). The statements concerned Pearce's supervision of E.F. Hutton's cash management system. Because "cash management—or mismanagement, as the case may be—is squarely within the scope of a [b]ranch [o]ffice [m]anager's activities," 828 F.2d at 831, the court found the claims "connected" to Pearce's duties as an associated person. The *Pearce* court, like the *Fleck* court, thus found the claims arbitrable under Rule 600(a) because the claims and defenses put in issue the activities of the "associated person." 828 F.2d at 832. Notably, the *Pearce* court reached this conclusion notwithstanding the fact that Pearce's duties did not involve trading on the New York Stock Exchange.

The majority tries to distinguish this case from *Fleck* and *Pearce* by arguing that the "issue of the truth of the defamation [in those cases] turned upon the asserted misconduct of the employee, not the nonmember." At 607. The distinction, however, is baseless. Although the majority appears to be suggesting otherwise, in neither *Fleck* nor *Pearce* was the misconduct of the employee the central issue. Rather, the claims in both cases concerned allegations of nonmember misbehavior. The claims were nonetheless arbitrable because the resolution of the dispute, including claims and defenses, placed in issue the associated person's occupational duties and performance.

Here, the essence of Haviland's claims, like those of Fleck and Pearce, is that the defendants J. Aron and Goldman engaged in misconduct that affected Haviland's employment. Resolution of his dispute with J. Aron will involve evaluating Goldman's treatment of Haviland, including reduction in salary and termination, as well as an evaluation of Haviland's performance for Goldman (and Goldman affiliates) as a Goldman employee. It is undisputed that the issue of Haviland's responsibility to protect his Goldman clients falls squarely within the scope of his duties as an "associated person." In my view, then, *Fleck* and *Pearce*, properly read, require us to hold that Haviland's claims against J. Aron are connected to Haviland's activities as an associated person and thus arbitrable.

The majority's position that Haviland's dispute with J. Aron is not arbitrable rests on two basic arguments. First, the majority says that because the language of Rule 600(a) indicates that the associated person has a lesser duty to arbitrate than a member, the "exchange-related" requirement of our 1984 ruling in *Paine Webber* is applicable. Second, the majority contends that Haviland's claim against J. Aron is not "exchange-related," and therefore not arbitrable, because it relates to options trading, not equity trading. I take issue with both arguments.

First, I disagree with the majority's reading of Rule 600(a) to place a narrower duty to arbitrate upon an associated person than on a member. The interpretation is not only irrelevant to the majority's decision to transpose the "exchange-related" requirement to this case, it is also, in my view, incorrect. The majority omits an "or" in abridging Rule 600(a). The proper reading, as we held in *Fleck*, is that an associated person's claims are arbitrable if they arise " 'in connection with [his] business [and/*or*] in connection with his activities as an associated person.' Rule 600(a)." 891 F.2d at 1054. Thus read, the associated person's duty to arbitrate is not narrower than that of a member.

If anything, Rule 600(a) may be read to require an associated person to arbitrate a

broader, not narrower, range of claims than a member under Rule 600(a). Rule 600(a) makes arbitrable any dispute between a non-member and "an associated person arising in connection with the business of such member ... and/or associated person in connection with his activities as an associated person." An associated person, is, by definition, an individual employed by a member. Therefore, Rule 600(a) could be read to require an associated person to arbitrate a claim arising *either* in connection with the business of the member with whom the person is associated *or* in connection with the associated person's activities as an associated person. The member's obligation, by contrast, extends only to claims arising in connection with its business.

I also disagree with the majority's decision that Haviland's claims are not "exchange-related" under *Paine Webber* and therefore not arbitrable. In so finding, the majority is not only forced to distort later holdings in *Fleck* and *Pearce*, but it also chooses a cramped view of "exchange-related." In *Paine Webber*, we found nonarbitrable plaintiff NYSE member's suit against a non-member bank, Chase Manhattan, and a former Chase employee for fraudulent representations which misled plaintiff into extending credit to a third party. We stated that the NYSE arbitration provisions governing member-non-member controversies, at least when "the alleged wrongdoer is a non-member," 728 F.2d at 581, should be limited to "controversies arising out of the member's exchange-related business." 728 F.2d at 580.

The majority's apparent conclusion that only a dispute arising out of trading activity on the NYSE can be considered "exchange-related" is overly narrow. As we recognized in *Paine Webber*, the regulation of employment relations at member firms is a core purpose of the NYSE system of self-regulation. The NYSE has a "substantial interest ... in the sound and proper management of its member firms." *Paine Webber*, 728 F.2d at 181. *See also Pearce*, 828 F.2d at 830 ("the Exchange expresses each firm's interest that every other member firm conduct its business in a manner

that inspires and warrants public confidence in all members ... [,] surely extend[ing] beyond [ ] handling of customer accounts"); *McGinnis v. E.F. Hutton & Co., Inc.*, 812 F.2d 1011, 1014 (6th Cir.1987) ("We can imagine little which would be of greater concern to the Exchange than the claims by one of its registered members [not working as a broker] that a prestigious brokerage house was involved [in an alleged attempt to induce participation in unlawful activity].") Therefore, disputes raising issues of the quality of internal management and control, including the conduct of employment relations, by NYSE members such as Goldman Sachs, must be considered "exchange-related."

My view that "exchange-related" should include such claims is supported by reasoning in *Paine Webber* itself. The *Paine Webber* court considered to be "exchange-related" under Rule 600(a) a slander claim brought by a member firm against a former registered representative of the member, unrelated to any trading on the NYSE. *See Ghiron v. Mayr*, 19 A.D.2d 54, 241 N.Y.S.2d 144 (1st Dept.1963) (per curiam). The slander in *Ghiron* related only to the firm's finances. The *Paine Webber* court nonetheless agreed with the New York court in *Ghiron* that the dispute had been properly subjected to arbitration, because the controversy "arose out of the plaintiff member firm's exchange business and the former representative's employment." 728 F.2d at 581; *see also id.* at 581 n. 6.

Second, the majority finding that Haviland's dispute is not "exchange-related" is dependent upon an inappropriate analogy of *Paine Webber* and the instant case. *Paine Webber*'s holding that a dispute between a member and a non-member was not arbitrable under Rule 600(a) was a narrow one, easily distinguished from the situation here. In *Paine Webber*, the NYSE had no articulated interest in the dispute between the member and the non-member. The dispute over the nonmember bank's credit reporting was in an area of activity far afield from those, like trading or employment relations, in which the NYSE evinces interest. The conduct of the NYSE member was not at issue, whether or not that conduct might have been "exchange-

related;" it was in this context that the court observed that NYSE non-member Chase, accused of fraudulent misrepresentation, was the only alleged "wrongdoer." Here, by contrast, Haviland's dispute requires examination of both the employment practices of an Exchange member, in which the NYSE has a direct interest, and the responsibilities and performance of the "associated person," Haviland, in his job.

Third, the majority's concern with protecting the reasonable expectations of NYSE members and associated persons is misplaced. Haviland's reasonable expectations would not be disturbed by submitting this claim to arbitration. Haviland signed a U–4 form authorizing the submission of his employment-related claims against Goldman to arbitration under NYSE Rule 347. Although J. Aron was not in existence at that time, Haviland reasonably should have expected that his virtually identical claims in a suit against a wholly-owned affiliate of Goldman might very well be subject to arbitration, as the plaintiff's claims were in *Fleck* and *Pearce*.

Haviland's conduct during this litigation suggests that he was aware that his claims against either Goldman or J. Aron or both might be submitted to arbitration. Although the allegations in the complaint principally concern Goldman, Haviland joined J. Aron as a "co-conspirator." When the district court found the dispute with Goldman to be arbitrable, however, Haviland promptly announced his intention to drop Goldman from the suit and pursue only J. Aron. As a forum shopper, Haviland should not now be heard to claim unfair surprise at the attempt of Goldman's affiliate to obtain arbitration.

Finally, I believe that the majority's narrow view of Rule 600(a)'s coverage is out of step with the strong federal policy favoring arbitration. That policy requires that doubts concerning the scope of an arbitration clause be resolved in favor of arbitration. *Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.*, 473 U.S. 614, 626, 105 S.Ct. 3346, 3353, 87 L.Ed.2d 444 (1985). I agree with the majority that whether a dispute is arbitrable is ultimately a matter of contract. However, courts are to "rigorously enforce" those agreements. *Id.* at 626, 105 S.Ct. at 3353 (quot-

ing *Dean Witter Reynolds v. Byrd*, 470 U.S. 213, 221, 105 S.Ct. 1238, 1242, 84 L.Ed.2d 158 (1985)). Courts are not to "distort the process of contract interpretation [ ] in order to ferret out the [controversies] inappropriate" for arbitration. *Mitsubishi*, 473 U.S. at 627, 105 S.Ct. at 3354.

This is particularly the case where, as here, "the arbitration will be governed by procedures specifically tailored to the context from which the agreement to arbitrate arises, and will be conducted by arbitrators who are expert in the norms and practices of the relevant industry." *Pearce*, 828 F.2d at 829. Such arbitrators would be well-qualified to resolve Haviland's dispute with J. Aron and the issues of responsibilities to clients, information exchanges in the energy futures and options markets, and the employment conditions imposed by J. Aron's co-conspirator Goldman. I believe, therefore, that we should not strain, as the majority has done, to remove Haviland's dispute from the purview of Rule 600(a).

For the reasons stated above, I respectfully dissent from the majority's decision to affirm the district court.