James A. STONE, Plaintiff

v.

PENNSYLVANIA MERCHANT
GROUP, LTD., Defendant.

Civil A. No. 95–3925.

United States District Court,
E.D. Pennsylvania.

Feb. 27, 1996.

Larry M. Keller and Gary Green, Sidkoff, Pincus & Green, P.C., Philadelphia, PA, for Plaintiff.

Mark Jakubik, Drinker, Biddle & Reath, Philadelphia, PA, for Defendant.

*MEMORANDUM AND ORDER*

ANITA B. BRODY, District Judge.

Defendant, Pennsylvania Merchant Group ("PMG"), has filed a motion to dismiss the complaint, or to grant summary judgment in its favor, or to stay the cause of action and compel plaintiff to submit his claims to arbitration pursuant to the rules of the National Association of Securities Dealers ("NASD"). For reasons discussed below, I will deny defendant's motion without prejudice.

## BACKGROUND

Plaintiff, James A. Stone, alleges the following: He was hired by the defendant, PMG, as a securities analyst in May of 1992, for a term of two years. PMG is in the business of acting as a securities broker and dealer, among other pursuits. Some of the terms of Stone's employment were set out in a short letter, dated May 11, 1992, from PMG's managing director. Stone alleges there were other oral terms. Shortly thereafter, on May 22, 1992, PMG gave Stone a Uniform Application for Securities Industry Registration or Transfer, commonly known as Form U-4. Stone states that he was given the form to sign along with other docu-ments, including health forms. He further states that signing the application was not a condition of his employment, that it was not bargained for, and that he did it as a convenience and to keep his registration updated. Stone completed the two years of his contract in May of 1994, but he stayed on under an oral agreement until November, 1994, when he was terminated. Stone brought this action in diversity against PMG, alleging breach of two employment contracts on the ground that PMG failed to pay him some of the compensation he was due under each contract, alleging defamation on the ground that PMG used him to further an illegal scheme, thus damaging his reputation, and alleging violation of the Pennsylvania Wage Payment and Collection Law, 43 Pa.Stat.Ann. § 260-271.

The Form U-4 that Stone signed, and on which PMG bases its motion to dismiss, is a generic form that is used for registration with one or more stock exchange. Item 10 of the form comprises boxes designating specific exchanges and jurisdictions for which the applicant may register. Stone checked one exchange, NASD, and two jurisdictions, New York and Pennsylvania. His application was for transfer or re-registration, and it gave the names of PMG and his prior firm. On the signature page, the terms of registration are listed under a bold heading stating "THE APPLICANT MUST READ THE FOL-LOWING VERY CAREFULLY." The fifth such term states:

> I agree to arbitrate any dispute, claim or controversy that may arise between me and my firm, or a customer, or any other person, that is required to be arbitrated under the rules, constitutions, or by-laws of the organizations indicated in Item 10 as may be amended from time to time and that any arbitration award rendered against me may be entered as a judgment in any court of competent jurisdiction.

This raises the question of what is "required to be arbitrated" under NASD. NASD did not explicitly require arbitration for employment-related matters until its

rules were amended effective October, 1993.[1] That was after plaintiff had signed Form U–4. It is unclear whether some of the events that gave rise to this lawsuit occurred before or after the 1993 amendment.[2]

PMG contends that Stone, by signing Form U–4, agreed to submit his claims to arbitration. Stone objects on several grounds. He argues: (1) that there is no binding arbitration agreement in effect; (2) that if one is in effect, it is between him and NASD, and PMG does not have standing to enforce it; (3) that the supposed agreement to arbitrate is unenforceable for vagueness and lack of consideration; (4) that the NASD rules in effect at the time Stone signed the U–4 form did not require the arbitration of employment disputes and, therefore, he is not required to submit his claims to arbitration; and (5) that even if the NASD arbitration clause is enforceable, not all of Stone's claims are within its scope.

## DISCUSSION

 In deciding whether to grant a motion to dismiss for failure to state a claim, I must "accept as true all allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the non-moving party." *Rocks v. Philadelphia*, 868 F.2d 644, 645 (3d Cir.1989). The issue before a court in a 12(b)(6) motion is not whether the plaintiff will ultimately prevail, but, rather, whether he would be entitled to relief under any set of facts he could prove consistent with the allegations set forth in the complaint. *Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S.Ct. 2229, 2232, 81 L.Ed.2d 59 (1984). The purpose of the motion is to test the sufficiency of the complaint, and the complaint should not be dismissed for failure to state a claim "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957).

Defendant invites me to treat its motion as a motion to dismiss, as a motion for summary judgment, or as a motion to stay plaintiff's cause of action and compel him to submit his claims to arbitration. Federal Rule of Civil Procedure 12(b) states, in pertinent part:

> If, on a motion asserting the defense numbered (6) to dismiss for failure of the pleading to state a claim upon which relief can be granted, matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties

---

1. Before 1993, the NASD Code of Arbitration Procedure stated:

 > Sec. 1. This Code of Arbitration Procedure is prescribed and adopted ... for the arbitration of any dispute, claim, or controversy arising out of or in connection with the business of any member of the Association, with the exception of disputes involving the insurance business of any member which is also an insurance company:
 > (1) between or among members;
 > (2) between or among members and public customers, or others; and
 > (3) between or among members, registered clearing agencies with which the Association has entered into an agreement to utilize the Association's arbitration facilities and procedures and participants, pledgees or other persons using the facilities of a registered clearing agency, as these terms are defined under the rules of such a registered clearing agency.

 . . . . .

 > Sec. 8. Any dispute, claim or controversy eligible for submission under Part I of this Code between or among members and/or associated

 persons, and/or certain others, arising in connection with the business of such members(s) [sic] or in connection with the activities of such associated person(s), shall be arbitrated under this Code, at the instance of:
 > (1) a member against another member;
 > (2) a member against a person associated with a member or a person associated with a member against a member; . . .

 NASD Manual, ¶¶ 3701, 3708, as quoted in plaintiff's memorandum at 21. This rule was amended October 1, 1993, to include specific reference to employment-related matters:

 > Sec. 1. This Code of Arbitration Procedure is prescribed and adopted ... for the arbitration of any dispute, claim, or controversy arising out of or in connection with the business of any member of the Association, or arising out of the employment or termination of employment of associated person(s) with any member,
 > . . .

 NASD Manual, ¶ 3701 (July 1994) (emphasis added).

2. If the issue of retroactivity is raised again, it would be helpful to know the dates of all the relevant conduct.

shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56.

Fed.R.Civ.P. 12(b). To the extent that I consider the additional materials submitted by the parties, I must treat PMG's motion to dismiss as one for summary judgment as provided by Federal Rule of Civil Procedure 12(b). I will grant such a motion if the pleadings and submissions show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56. In deciding a motion for summary judgment, I must take the evidence, and all reasonable inferences drawn therefrom, in the light most favorable to the nonmoving party. *Small v. Seldows Stationery,* 617 F.2d 992, 994 (3d Cir.1980).

■ I conclude the motion must be considered as one for summary judgment because the complaint by itself does not fail to state a claim. The reasons PMG advances for dismissing the complaint rely on facts outside the pleadings, and the additional materials submitted by the parties are highly relevant to the issues raised. However, I also conclude that the additional materials the parties have submitted are not all that I need to decide the motion as one for summary judgment or to grant a stay. I will therefore deny the motion without prejudice.

The parties agree that a critical issue is whether there was a valid agreement binding the plaintiff to arbitrate the claims he raises against the defendant in this suit. The information of record on which PMG asks me to grant its motion for summary judgment consists of Stone's signed U–4 form and several sections of the NASD rules. Stone does not allege in the complaint that PMG was and is a member of NASD at times all relevant to this action, nor does PMG provide evidence of its former and continuing membership.[3] In *Brown v. Gilligan, Will & Co.,* 287

---

**3.** I might infer PMG's NASD membership from Stone's U–4 form; however, such an inference in favor of the moving party would not be proper in deciding a motion for summary judgment.

**4.** In some of the cases cited, it appears the plaintiff was required to sign the U–4 form as a condition of his employment, which evidently was not the case here. *See, e.g., Gilmer v. Interstate/Johnson Lane Corp.,* 500 U.S. 20, 20, 111

---

F.Supp. 766, 769 (S.D.N.Y.1968), the court quoted a treatise as stating that most exchanges required applicants for membership to sign the constitution of the exchange or an agreement to be bound by its provisions. It would be helpful to know whether PMG signed any such agreement and if so, what its terms were.

There are cases in which courts have held that the signer of Form U–4 was required to arbitrate a dispute with a member of a stock exchange, and PMG has cited a number of them. *See, e.g., Haviland v. Goldman, Sachs & Co.,* 947 F.2d 601 (2d Cir.1991), *cert. denied,* 504 U.S. 930, 112 S.Ct. 1995, 118 L.Ed.2d 591 (1992); *Pearce v. E.F. Hutton Group, Inc.,* 828 F.2d 826 (D.C.Cir.1987); *Tullis v. Kohlmeyer & Co.,* 551 F.2d 632 (5th Cir.1977); *Coenen v. R.W. Pressprich & Co.,* 453 F.2d 1209 (2d Cir.), *cert. denied,* 406 U.S. 949, 92 S.Ct. 2045, 32 L.Ed.2d 337 (1972). The question is whether such a holding is supported by the present record in this case, which is either incomplete or distinguishable from the facts given in those cases.[4] After deciding as a general matter whether Stone's signing the form committed him to arbitrate at least some of his disputes with PMG, I will consider, if necessary, Stone's arguments regarding retroactivity and the scope of such an agreement.

## CONCLUSION

On the basis of the present record, I cannot decide whether or not plaintiff's signing of Form U–4 form created a contract with PMG to arbitrate some or all of this dispute and I will therefore deny defendant's motion without prejudice.

---

S.Ct. 1647, 1648, 114 L.Ed.2d 26 (1991); *Pearce,* 828 F.2d at 828. Moreover, the cases PMG cites involve stock exchanges other than NASD, which may have had somewhat different rules. For example, the New York Stock Exchange required arbitration of employment disputes at a time when NASD did not. *See, e.g., Haviland,* 947 F.2d at 603.